HARTFORD-EMPIRE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 94788, 95673. Promulgated December 19, 1940.

*Edgar J. Goodrich, Esq., Arthur T. Safford, Esq.,* and *Norman E. Webster, C. P. A.,* for the petitioner.

*Charles P. Reilly, Esq.,* for the respondent.

118

OPINION.

SMITH: The question for decision in these proceedings is whether the petitioner is entitled to deduct, from the gross income of each of the years 1932, 1933, and 1934, $133,944.19 representing depreciation on the Empire patents and $27,817.56 depreciation on the Howard patents. The petitioner has claimed and been allowed in its tax returns like amounts for depreciation on the Empire and the Howard patents for each of the years 1923 to 1931, inclusive. The allowance was taken upon the costs of the patents and patent

rights to the petitioner as stipulated in *Hartford-Empire Co.*, 26 B. T. A. 134, which involved deficiencies determined for the years 1923 to 1928, inclusive. Petitioner has assumed that this was the correct basis for the computation of the allowance and the respondent has not questioned the correctness of the basis in the audit of the petitioner's returns for those years. For the taxable years before us the respondent contends that the petitioner is not entitled to allowances for depreciation based upon the values of patents and patent applications as of January 1, 1923, but upon the basis of cost to the predecessor owners. The respondent contends that the petitioner for years prior to 1932 has claimed and been allowed greater amounts for depreciation in respect of the Empire and the Howard patents than it was entitled to under the law; that it has already more than recovered the basis through deductions for depreciation; and, hence, that it is not entitled to any further deductions.

It is the position of the petitioner herein that the question of the proper basis for the computation of the allowances is *res adjudicata;* that the question has already been decided by the Board in *Hartford-Empire Co., supra.*

In Bouvier's Law Dictionary it is stated:

The doctrine of *res judicata* is plain and intelligible, and amounts simply to this, that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by a new proceeding either before the same or any other tribunal; *Foster* v. *The Richard Busteed*, 100 Mass. 409, 1 Am. Rep. 125.

In *Sand Springs Railway Co.*, 31 B. T. A. 392, the Board said at page 394:

The doctrine of *res judicata* is so well fixed in the law that no useful purpose could be served here by further discussion. *Cromwell* v. *County of Sac*, 94 U. S. 351, 352, and 353; *New Orleans* v. *Citizens Bank*, 167 U. S. 371; *Southern Pacific Railroad Co.* v. *United States*, 168 U. S. 1; *United States* v. *Moser*, 266 U. S. 236; *Tait* v. *Western Maryland Railway Co.*, 289 U. S. 620, 623; *Mary Haller*, 26 B. T. A. 395; *Charles P. Leininger*, 29 B. T. A. 874; *Portage Silica Co.*, 29 B. T. A. 881; *Edwin J. Marshall*, 29 B. T. A. 1075.

Our inquiry, therefore, is as to the propriety of its application in bar of the pending proffer of evidence.

Since the parties to both proceedings are the same, but the causes of action different, the decision in the former cases is a bar here, if, and only if, "the point or question to be determined in the latter action is the same as that litigated and determined in the original action." *Tait* v. *Western Maryland Railway Co., supra.*

The question here is whether the basis for the computation of depreciation on the Empire and the Howard patents was judicially determined by the Board in the proceeding at 26 B. T. A. 134.

The parties to the prior proceeding conceded that the basis for depreciation of the assets acquired by petitioner from the Hartford-Fairmont Co. was the same in the hands of petitioner as it had been

in the hands of the Hartford-Fairmont Co. The only issue for decision by the Board in that connection was whether that basis was the cost of those assets to the Hartford-Fairmont Co. or their fair market value on March 1, 1913. The petitioner's basis for depreciation on the assets acquired from the Empire Machine Co. and the Howard Co. was not in issue in that case, nor was the question whether the acquisition of assets from any one of the three companies by the petitioner constituted a reorganization or nontaxable exchange. Quite naturally in the recomputation of the deficiencies under Rule 50 the parties took cognizance of the agreement which they had made between themselves with respect to the correct amount of depreciation on the Empire and the Howard patents and the Board entered the agreed upon computation as its decision in the case.

The petitioner contends that in *Arthur Curtiss James*, 31 B. T. A. 712, we held that a stipulation of facts filed by the parties in a prior proceeding made the question in the subqent proceeding *res adjudicata*. But in that case the question in issue before the Board was the amount of earnings or profits of the Phelps-Dodge Corporation accumulated since February 28, 1913, on hand and available for dividends on January 1, 1918. That was the precise question raised by the pleadings in the case of the same taxpayer, 13 B. T. A. 764. Since the Board had adjudicated that question by its decision in the earlier case (albeit the decision was entered pursuant to a stipulation of the parties), the Board held that the plea of *res adjudicata* was well taken. The *James* case differs from the instant proceedings in that here we have for the first time the question of the proper depreciation allowance on the Empire and the Howard patents. It was not raised by the pleadings in the proceeding at 26 B. T. A. 134, and, consequently, was not adjudicated by the Board in that proceeding.

An earlier judgment is conclusive only as to the precise facts, rights, questions or issues adjudicated in the earlier case that are again facts, rights, questions or issues presented for adjudication in the second case. *Charles P. Leininger*, 29 B. T. A. 874; *D. F. Strickland*, 32 B. T. A. 804; *Terre Haute Electric Co.*, 33 B. T. A. 975, 983; (C. C. A., 7th Cir.), 96 Fed. (2d) 383; *Hanby* v. *Commissioner* (C. C. A., 4th Cir.), 67 Fed. (2d) 125; *Tait* v. *Western Maryland Railway Co.*, 289 U. S. 620.

The *res adjudicata* plea of the petitioner can not be sustained.

The petitioner further submits that, wholly aside from the application of *res adjudicata*, the respondent is at this time estopped to deny that the petitioner is entitled to deduct the same amount of amortization on the Empire and the Howard patents for the years

in question as has been allowed for years prior to 1932. It states, and the respondent does not deny, that the respondent was in possession of the same facts with respect to the computation of the amortization allowance for the prior years as for the taxable years; that therefore 'the respondent can not equitably at this time reverse his position with respect to the basis for the allowance of amortization on the Empire and the Howard patents.

Nowhere does it appear that the respondent has in any wise misled the petitioner to its detriment in the determination of the basis upon which the amortization allowances should be made. The simple facts are that in the returns for years prior to 1932 the transferors, the Hartford-Fairmont Co., Empire Machine Co., and Howard Co., all proceeded upon the theory that the transfers of assets made by those companies to the petitioner, effective as of January 1, 1923, were tax-free exchanges involving them in no tax liability. The respondent acquiesced in such claims. The petitioner claimed that the basis for the computation of amortization on the Empire and the Howard patents was a fair market value of the patents and applications for patents transferred to the petitioner as at January 1, 1923. The respondent acquiesced in such claim. We do not see, however, how the respondent is in any wise foreclosed from the computation of the correct amount of the amortization allowance for the taxable years 1932, 1933, and 1934 by such acquiescence. The theory of equitable estoppel has no application to this case. See *James Couzens*, 11 B. T. A. 1040, 1147.

The petitioner further submits that even though its plea of *res adjudicata* and of equitable estoppel is not sustained, the basis for the computation of the amortization allowance is the fair market value of the patents and applications for patents on January 1, 1923; that under the provisions of the Revenue Act of 1921 the transactions by which the Empire Machine Co. and Howard Co. transferred assets to the petitioner were taxable transactions and that the basis to the petitioner for the amortization allowance is therefore the fair market value of the assets acquired.

The basis for depreciation of property for the years 1932 and 1933 is to be found in the Revenue Act of 1932 and the basis for 1934 in the Revenue Act of 1934. The pertinent provisions of the acts are identical. Therefore, reference will be made only to the 1932 Act.

Section 114 of the 1932 Act provides that the basis for depreciation of property shall be the basis provided in section 113 for determining gain or loss on sale or disposition of such property. Section 113 (a) provides in part as follows:

(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer

an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities) * * *

\*         \*         \*         \*         \*         \*         \*

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

Section 112 (b) (5) provides:

(b) EXCHANGES SOLELY IN KIND.—

\*         \*         \*         \*         \*         \*         \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

It is quite clear that (1) if the acquisition by the petitioner of the Empire and the Howard patents and patent rights was in a transaction of the type described in section 112 (b) (5), even though the consideration for the transfers of the properties included money, in addition to stock of the petitioner, or (2) if the acquisition was in connection with a reorganization and after the transfer of the property an interest or control of 50 percent or more remained in the transferors, or any of them, then, in either event, the basis for depreciation is the same as it would have been in the hands of the transferors, adjusted for the amount of gain or loss recognized to the transferors upon such transfers under the Revenue Act of 1921. In our opinion the transactions here under consideration fit within not merely one but both of the above requirements.

It is admitted that no gain or loss was recognized to the transferors, the Empire Machine Co. and the Howard Co., for the year in which the transfers were made. The respondent contends that such nonrecognition of gain or loss to the transferors was entirely proper under the Revenue Act of 1921.

Section 202 of the 1921 Act provides in part:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

  *  *  *  *  *  *  *

(3) When (A) a person transfers any property, real, personal or mixed, to a corporation, and immediately after the transfer is in control of such corporation, or (B) two or more persons transfer any such property to a corporation, and immediately after the transfer are in control of such corporation, and the amounts of stock, securities, or both, received by such persons are in substantially the same proportion as their interests in the property before such transfer. For the purposes of this paragraph, a person is, or two or more persons are, "in control" of a corporation when owning at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

As to the meaning of the term "reorganization" as used in section 202 (c) (2) of the 1921 Act, that paragraph provides:

(2) * * * The word "reorganization," as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation), recapitalization, or mere change in identity, form, or place of organization of a corporation (however effected) ; * * *

We consider first the question whether the exchanges of assets made by the stockholders of the Hartford-Fairmont Co. and by the Empire Machine Co. and the Howard Co. for shares of stock of the petitioner in 1922 were tax-free exchanges as claimed by the transferors and allowed by the respondent. The facts bearing upon this issue are that the petitioner issued all of its common stock (100,000 shares) in the acquisition of all the shares of stock of the Hartford-Fairmont Co. and of most of the assets of the Empire Machine Co. Under the formation agreement the petitioner assumed the liabilities of the Hartford-Fairmont Co. The net value of the assets of that company is arrived at as follows:

| | | |
|---|---|---|
| Assets _____ | | $3, 758, 470. 50 |
| Less depreciation reserves and liabilities: | | |
|   Total of depreciation reserves_____ | $460, 479. 42 | |
|   Due Empire Machine Co._____ | 17, 548. 79 | |
|   Notes payable_____ | 361, 000. 00 | |
|   Due employees _____ | 48, 700. 00 | |
| | | 887, 728. 21 |
|    Assets (net) _____ | | 2, 870, 742. 29 |

The outstanding notes of $361,000 were payable in cash or preferred stock of Hartford-Fairmont Co., or its successor. The petitioner

acquired these notes from the noteholders by issuing in exchange therefor 3,610 shares of its own preferred stock.

Included in the amount "Due employees $48,700" listed as a liability of the Hartford-Fairmont Co. were warrants in the amount of $33,000. The warrant holders were employees of that company and most of them were also stockholders. The petitioner acquired these warrants by issuing to the warrant holders in exchange for their warrants 330 shares of the petitioner's preferred stock.

As of January 1, 1923, the petitioner acquired all of the assets of the Howard Co., consisting of patents, patent rights, and contract rights valued at $500,000. As consideration therefor it paid $50,300 cash and issued 4,497 shares of its preferred stock.

It will thus be seen that the petitioner issued all of its common and preferred stock outstanding at January 1, 1923, in the acquisition of assets from the Hartford-Fairmont Co., Empire Machine Co., and Howard Co., and in the acquisition of the notes payable and warrants which the Hartford-Fairmont Co. had outstanding.

The petitioner contends that the noteholders and warrant holders of the Hartford-Fairmont Co. were not transferors within the meaning of the statute; also that the assets of the Howard Co. were acquired in a separate transaction from that relating to the acquisition of the assets of the Hartford-Fairmont Co. and Empire Machine Co., and, accordingly, that it can not be held that there was a reorganization of the three companies mentioned within the meaning of the Revenue Act of 1921.

The respondent submits that the recipients of all of the issued common and preferred stock of the petitioner were transferors; that they transferred assets to the petitioner for shares of stock of the petitioner; and that such transferors correctly claimed, in 1922, that they had exchanged such assets for shares of stock of the petitioner in tax-free exchanges.

We are of the opinion that there is no merit in the contention of the petitioner that the noteholders and warrant holders of the Hartford-Fairmont Co. were not transferors within the meaning of the taxing statute. The notes and warrants were clearly property. We think that they fall in the same category as any other property, as, for instance, patents and applications for patents.

The petitioner further contends that the acquisition by it of the Howard Co.'s assets was separate and distinct from the acquisition of the shares of stock of the Hartford-Fairmont Co. and of the assets of the Empire Machine Co. It is true that the formation agreement is silent with regard to the proposed acquisition of the Howard Co.'s assets. It is also true that negotiations for the acquisition of the assets of all three companies were going on at the same time. That the acquisition

by the petitioner of the assets of the Howard Co. was a part of a plan for the formation of the petitioner is indicated by the following statement from the "Agreement for Purchase of Stock of Howard Automatic Glass Feeder Co." entered into on June 23, 1922:

WITNESSETH THAT:

Section 1. WHEREAS, the said Fairmont Company and interests associated with it are now in the course of organizing under the laws of the State of Delaware, a new corporation which shall be called the Hartford-Empire Company, hereinafter referred to as the Hartford Company, which Company, it is intended, shall take over the majority of stock of said Fairmont Company and the majority of the assets of the Empire Machine Company, a corporation organized under the laws of the State of Maine, * * *

The petitioner corporation had an authorized capital of 100,000 no par value common shares and 15,000 preferred shares of a par value of $100 each. The formation agreement was concerned only with the acquisition of assets of the Hartford-Fairmont Co. and Empire Machine Co. for the 100,000 no par value common shares. It is apparent, however, that a part of the preferred shares was for the acquisition of other properties. In fact, 3,940 shares of the preferred stock had been issued to the noteholders and warrant holders of the Hartford-Fairmont Co. prior to the date of the formation agreement and 4,497 shares of the preferred stock were issued to the Howard Co. only a few days after the date of such agreement and in fulfillment of the agreement of the petitioner with that company dated June 23, 1922. It is furthermore to be noted that the petitioner was organized to consolidate the ownership of independent and complementary devices and processes for feeding and forming molten glass. The acquisition of the Howard Co.'s patents and applications for patents was necessary in carrying out the plan. In its brief the petitioner states that "petitioner had to buy the Howard patents at whatever cost and was forced to pay the price Howard regarded as their full market value." The Howard Co. was unquestionably a transferor of property to the petitioner. Where several transfers are made pursuant to a plan it is not even necessary that the several transfers be effected simultaneously. Portland Oil Co. v. Commissioner, 109 Fed. (2d) 479. In that case was involved the question whether after a transfer wherein no gain or loss was recognized the transferee corporation was entitled to a stepped-up basis upon the transferred property. The transfer occurred in 1929. The tax year in which the stepped-up basis was sought was 1931. The new corporation in that case had acquired a certain valuable contract from the old corporation for bonds of the new company and 75 percent of its stock. No gain or loss was recognized by the old corporation, but the shareholders reported their gains on the liquidation distributions when the old corporation was liquidated and dissolved. The other 25 percent of the stock of the new company had been previously issued for

cash to the wives of the stockholders of the old corporation. Relying on section 113 (a) (7) of the Revenue Act of 1928, the new company contended that, because the old corporation had only a 75 percent interest in the new company, it was not limited to the old company's basis for the property transferred. The court, however, found it unnecessary to consider section 113 (a) (7) of the Revenue Act of 1928 or the reorganization status. Its conclusion was based on sections 112 (b) (5) and 113 (a) (8) of the statute. The court held that the wives' payment of cash to the new corporation for its stock must be considered as one transaction with the old corporation's transfer of the contract; that the cash was "property"; and that therefore there was a transfer by the wives and the old corporation to the new corporation for all its stock (100 percent), and, therefore, the transferors, taken collectively, were in control of the new corporation. Similarly, here, the acquisition by the petitioner of the Hartford-Fairmont Co. stock, of the Empire patents, of the Howard patents, and of the Fairmont notes and warrants were all steps in a single plan. The owners of these assets were transferors of property to the petitioner and they were the owners not only of 80 percent of the common and preferred shares of the petitioner but of 100 percent.

The petitioner also contends that the amounts of stock received by the transferors were not in substantially the same proportions as their interests in the property before the transfer. We think, however, the evidence shows that they were. The basis for determining this fact is the value of the assets at the date of transfer in comparison with the value of the stock received by each transferor. *United Carbon Co.* v. *Commissioner*, 90 Fed. (2d) 43. The following table shows the value of the assets to each transferor (or group of transferors) at the time of the transfer, the percentage of each in the total assets transferred to the petitioner, the percentage of stock in the petitioner corporation received by each in the exchange, and the differences between the percentages of interest before and after:

| Transferors | Value of assets at time of transfer | Percentage of total | Shares of Hartford-Empire Co. stock issued | | Value of Hartford-Empire Co. stock issued to transferors (common stock, $52.20; preferred stock, $100) | Percentage of total | Difference between percentages |
|---|---|---|---|---|---|---|---|
| | | | Common | Preferred | | | |
| (1) Group of stockholders of Hartford-Fairmont Co. | $2,870,742.00 | 46.954 | 54,991 | | $2,870,742.00 | 47.344 | *Percent* +0.390 |
| (2) Group of noteholders of Hartford-Fairmont Co. | 361,000.00 | 5.905 | | 3,610 | 361,000.00 | 5.954 | +.049 |
| (3) Group of warrant holders of Hartford-Fairmont Co. | 33,000.00 | .540 | | 330 | 33,000.00 | .544 | +.004 |
| (4) Empire-Machine Co. | 1,349,173.00 | 38.423 | 45,000 | | 2,349,173.00 | 38.742 | +.319 |
| (5) Howard Automatic Glass Feeder Co. | 500,000.00 | 8.178 | | 4,497 | 449,700.00 | 7.416 | —.762 |
| Total | 6,113,915.00 | 100.000 | 99,991 | 8,437 | 6,063,615.00 | 100.000 | 0 |

Had it not been for the fact that the Howard Co. received $50,300 in cash as part consideration for the transfer of its assets to the petitioner there would be an absolute equivalence between the percentage of the total assets of each transferor and the percentage of the value of the shares received by each. The respondent argues that under the opinion of the court in *United Carbon Co.* v. *Commissioner, supra,* the value of the assets transferred by the Howard Co. should be reduced from $500,000 to $449,700, in which case there would be an absolute equivalence between the two columns of percentages in the above table. We think, however, that the variation in percentage by including the value of the Howard assets at $500,000, which was the agreed purchase price, makes the substantial equivalence required by the statute.

Even if the transaction by which the petitioner acquired the shares of stock of the Hartford-Fairmont Co. and assets of the Empire Machine Co. be treated separately from that by which it acquired the assets of the Howard Co. we nevertheless think that the amortization allowance on the "Empire" and "Howard" patents is subject to the provisions of section 113 (a) (7) of the Revenue Acts of 1932 and 1934, for after the transfer of the former the transferors of the Fairmont-Hartford Co. stock and of the assets of the Empire Machine Co. had more than a 50 percent interest in the stock of the petitioner and, since the petitioner acquired substantially all of the assets of the Howard Co., those assets were acquired in a reorganization of that company. (See sec. 202 (c) (3), Revenue Act of 1921.)

It is clear that under the provisions of the Revenue Acts of 1932 and 1934 it was not the intention of Congress that transferees acquiring assets on a tax-free exchange should be entitled to compute depreciation upon a different basis from that of the transferors. If this were so a taxpayer would receive taxable income which would be offset by allowances for depreciation, and, hence, never subject to income tax. The Revenue Acts of 1932 and 1934 are specific that a transferee receiving property in a tax-free exchange shall not have a stepped-up basis for the purpose of allowances for depreciation. See *Fairbanks Court Wholesale Grocery Co.* v. *Commissioner* (C. C. A., 7th Cir.), 84 Fed. (2d) 18, affirming *Durand-McNeil-Horner Co.*, 30 B. T. A. 769; certiorari denied, 299 U. S. 582; *Portland Oil Co.* v. *Commissioner, supra.* In the *Fairbanks Court Wholesale Grocery Co.* case the statutory provision relied upon by the court is section 204 (a) (7) of the 1924 Act, which section corresponds with section 113 (a) (7) of the 1932 Act except that the 80 percent control required by the 1924 Act is changed to 50 percent in the 1932 Act. The court in its opinion stated: "We think it was

the purpose of the section in question to prevent any so-called 'stepped-up' basis of valuation where no substantial amount of new capital was introduced."

In accordance with the stipulations of the parties, the petitioner is not entitled to any deduction for amortization of the patents and patent rights acquired by it from the Empire Machine Co. and the Howard Co. for the years 1932, 1933, and 1934.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*