Joseph J. Bodell v. Commissioner.
Bodell v. Commissioner
Docket No. 2870.
United States Tax Court
1945 Tax Ct. Memo LEXIS 284; 4 T.C.M. (CCH) 258; T.C.M. (RIA) 45076; February 27, 1945
Ira Lloyd Letts, Esq., Andrew P. Quinn, Esq., and Richard F. Canning, Esq., Custom House St., Providence, R. I., for the petitioner. R. H. Transue, Esq., for the respondent. MELLOTT
MELLOTT, Judge: The Commissioner determined a deficiency in the income tax of petitioner for the year 1939 in the amount of $13,207.72. The sole issue is - what is the basis for gain or loss of 3,000 shares of common stock of the Investors Trust Company sold by petitioner in 1939? The answer depends upon whether the transaction whereby petitioner and others received shares of Investors Trust Company stock for stock *285 of Investors Corporation was within the provisions of section 112 (b) (5) of the Revenue Act of 1936. Findings of Fact Petitioner, a resident of Providence, Rhode Island, filed his income tax return for 1939 with the collector of internal revenue for the district of Rhode Island. Investors Corporation was organized under the general laws of the State of Rhode Island on June 5, 1925. From the date of incorporation until March 30, 1940, it was engaged in the business of investing, reinvesting, owning and holding securities. Its capital structure at all times material hereto was as follows: $6 Cumulative First Preferred
Stock, No par
Authorized
35,000 sh.
Outstanding
14,328 sh. $6 Cumulative Second Preferred
Stock, No par
Authorized
3,000 sh.
Outstanding
3,000 sh.
Less: Stock in
Treasury
136 sh.
2,864 sh. $6 Cumulative Convertible Pre-
ferred Stock, No par
Authorized
4,000 sh.
Outstanding
4,000 sh.
Less: Stock in
Treasury
286 sh.
3,714 sh.
Common Stock, No par
Authorized
130,000 sh.
Outstanding
96,716-11/20ths
Investors Trust Company was incorporated under the banking laws of Rhode Island on July 21, 1928. Since its *286 incorporation it has been engaged in the business of investing, reinvesting, owning and holding securities. Prio to the issuance of stock pursuant to the exchange hereinafter described, its capitalization was as follows: $1.50 Cumulative Preferred Stock, $25 Par
Authorized
80,000 sh.
Outstanding
10,000 sh.
Common Stock, $25 Par
Authorized
40,000 sh.
Outstanding
3,000 sh.
On March 19, 1937, there was submitted to the stockholders of Investors Corporation a written proposal for the exchange by the stockholders of Investors Corporation of their stock therein for stock of Investors Trust Company, upon the following basis: "(1) For each share of First Preferred Stock of Investors Corporation there would be exchanged two shares of Preferred Stock of Investors Trust Company, with a cash adjustment as of the date of the exchange for the amount by which the dividends accrued on the stock of Investors Corporation should exceed the dividends accrued upon the stock of Investors Trust Company computed at $2.50 per share per annum. "(2) For each share of the Second Preferred and Convertible Preferred Stock of Investors Corporation there would be exchanged, at the *287 option of the stockholder, either: "(A) two shares of Common Stock of Investors Trust Company, together with such additional shares of common stock of Investors Trust Company, taken at $50 per share, as would equal the accrued and unpaid dividends upon the stock of Investors Corporation; or "(B) one share of Preferred Stock and one share of Common Stock of Investors Trust Company, together with such additional shares of Common Stock of Investors Trust Company, taken at $50 per share, as would equal the amount by which the accrued and unpaid dividends upon the stock of Investors Corporation might exceed accrued dividends on the Preferred Stock of Investors Trust Company computed at $2.50 per share per annum. "A cash adjustment was to be made to avoid the issuance of factional shares of Common Stock in respect to the accrued dividends or to the excess. "(3) The Common Stock of Investors Corporation, taken at its liquidating book value as of the effective date of the exchange, was to be exchanged for the Common Stock of Investors Trust Company taken at $50 per share. A cash adjustment was to be made to avoid the issuance of fractional shares." The plan of exchange, prior to *288 its submission to the stockholders of Investors Corporation, had been approved by vote of the holders of a majority of the Common Stock of each corporation and by the board of directors of Investors Corporation. Some of the stockholders of Investors Corporation who participated in the exchange held stock in both corporations prior to the exchange. Sixty such stockholders of Investors Corporation owned, prior to May 11, 1937, 4,535 shares of preferred stock of Investors Trust Company and acquired, pursuant to the exchange, an additional 7,446 shares of such preferred stock. Ten such stockholders of Investors Corporation owned 766 shares of common stock of Investors Trust Company prior to the exchange and acquired an additional 9,418 shares of common stock pursuant to the exchange. There were outstanding at the close of business on May 11, 1937, 29,303 shares of preferred stock of Investors Trust Company. Stockholders of Investors Corporation who participated in the exchange then owned 23,838 shares, computed by adding to the number of shares owned by them prior to the exchange (4,535) the number of shares acquired by them pursuant to the plan of exchange (19,303). This was in excess *289 of eighty percent of the shares outstanding. The total number of shares of common stock of Investors Trust Company outstanding at the close of business on May 11, 1937, was 20,538. Stockholders of Investors Corporation who participated in the exchange then owned 18,304 shares, computed by adding to the number of shares owned by them prior to the exchange (766) the number acquired pursuant to the exchange (17,538). This was in excess of eighty percent of the shares outstanding. The time originally fixed for expiration of the offer of exchange was April 15, 1937. It was subsequently extended to April 30, 1937, and the stockholders were advised by letter of such extension. On May 11, 1937, the exchange was consummated by those stockholders of Investors Corporation who accepted the offer and by the Investors Trust Company. Bodell & Company, a partnership, engaged in the investment security business, acted as agents for the Investors Trust Company in carrying out the exchange. The offices of the partnership were in the downtown district of Providence, R. I. During the hurricane and flood which visited that community in September 1938, the vault containing its records was inundated *290 and, in the process of "housecleaning", records that had become "soaked and smelly" were destroyed. Among the records destroyed were those showing the amount of each class of stock of Investors Corporation deposited by each of its stockholders in connection with the exchange. A summary showing the amount of the various classes of stock of Investors Corporation surrendered and the amount of preferred and common stock of the Investors Trust Company each class of depositing stockholders received in the exchange was one of the records saivaged. This summary, together with compilations showing how the exchanges affected the interests of the various groups of stockholders, is set forth in the following tables [see the next page]: Value of prop-
erty (Stock of
Investors Cor-
Number of Shares
poration) trans-
Received by
ferred to
Transferors
Aggregate
Investors Trust
Value of
Aggregate
in exchange
Pre-
Com-
Stock
Loss
Transferors
for its stocks
ferred
mon
Received
Sustained
1. Group of 1st preferred stock-
holders - 7,037 shares at $100 a
share and dividends of $3,518.50
$ 707,218.50
14,074
$ 633,330.00
$ 3,888.50
2. Group of 2nd preferred share-
holders option A 358 shares at $100 and dividends of $11,340
47,140.00
942.80
37,712.00
9,428.00
3. Group of 2nd preferred share-
holders option B 2,292 share at $100 and dividends of $72,660
301,860.00
2,292
3,745.20
252,948.00
48,912.00
4. Group of convertible preferred
shareholders option A 223 shares
at $100 a share and dividends
of $6,979
29,279.00
585.58
23,423.20
5,855.80
5. Group of convertible preferred
shareholders option B 2,937
shares at $100 a share and divi-
dends of $92,721
386,421.00
2,937
4,791.42
323,821.80
62,599.20
6. Group of common shareholders
83,738 3/4 shares at $4,5477 a
share
380,818.70
7,474.00
298,960.00
81,858.70
Totals
$1,852,737.20
19,303
17,359
$1,570,195.00
$282,542.20
*291 Percentage of
Difference
"Spread". Com-
between
Percentage parison, on per-
Transferor
Percentage of
Percentage of
Percentages
of Aggre-
centage basis,
Described
Total Assets
Value of Total
in
gate Loss
between
Above
Transferred
Stock Received
Col. 1 & 2
Sustained
Col. 1 and 3
Group 1
38.1716
40.3345
+2.1629
26.15
+5.6662
Group 2
2.5443
2.4017
-.1426
3.34
-5.6046
Group 3
16.2927
16.1093
-.1834
17.31
-1.1256
Group 4
1.5803
1.4917
-.0886
2.07
-5.6065
Group 5
20.8568
20.6230
-.2338
22.16
-1.1209
Group 6
20.5543
19.0398
-1.5145
28.91
-7.3682
The common stock of Investors Corporation was exchanged upon the basis of a liquidating book value for the common stock of Investors Corporation as of April 30, 1937, of $4.5477 per share. Immediately after the exchange the stockholders of Investors Corporation who participated therein were in control of Investors Trust Company. Petitioner was a stockholder of Investors Corporation and on May 11, 1937, exchanged his stock of Investors Corporation for stock of Investors Trust Company, as follows: Shares of Investors
Shares of Investors
Value on Date
Corporation Owned
Cost
Trust Co. Received
of Exchange *
892 2nd Preferred
$ 30,000.57
892 Preferred
$ 40,140.00
and
892 Common
35,680.00
263 Conv. Preferred
968.87
263 Preferred
11,835.00
and
263 Common
10,520.00
33,525 Common
211,453.13
3,048 Common
121,920.00
Total
$242,422.57
$220,095.00
*292 In addition petitioner received 570 shares of common stock of Investors Trust Company, having a value of $22,800, on account of accrued dividends on 892 shares of second preferred stock of Investors Corporation, and 168 shares of common stock of Investors Trust Company, having a value of $6,720, on account of accrued dividends on 263 shares of convertible preferred stock of Investors Corporation. The 738 shares of common stock so received were reported by petitioner as dividend income in 1937 in the total amount of $29,520. Petitioner did not deduct any loss on account of the exchange of stock of Investors Corporation for stock of Investors Trust Company. On December 26, 1939, petitioner sold 3,000 shares of common stock of Investors Trust Company for $12,000. The shares so sold were shares of common stock which had been received in exchange for shares of common stock of Investors Corporation. In his income tax return for 1939 petitioner claimed that he sustained a loss of $196,051.46, computed by subtracting $12,000 from $208,051.46, the cost basis of the common stock of Investors Corporation which he had transferred *293 to Investors Trust Company in exchange for the 3,000 shares sold. Because of the 50 percent limitation prescribed in section 117 (b) of the Internal Revenue Code, petitioner deducted, in computing his net income, the amount of $98,025.73. The Commissioner determined that petitioner's basis for gain or loss on the 3,000 shares sold was their fair market value at time of acquisition or $120,000; that he sustained a loss of $108,000 ($120,000 minus $12,000)., and that his deductible long-term loss was $54,000. The amount of stock received by each of the transferors was not substantially in proportion to his interest in the transferred property prior to the exchange. Opinion Both parties agree that the basis for gain or loss upon the 3,000 shares of common stock of Investors Trust Company sold by petitioner in 1939 depends upon whether the 1937 transaction, wherein petitioner acquired this stock for stock of Investors Corporation, falls within the provisions of section 112 (b) (5) of the Revenue Act of 1936. [1] If it does, then section 113 (a) (6) of the same act provides that the basis for gain or loss is the same as that of the property transferred in exchange *294 therefor, viz., the common stock of Investors Corporation. If it does not, the basis is the value of the common stock of Investors Trust Company at the time of the exchange. In order to satisfy the requirements of section 112 (b) (5), supra, it was incumbent upon petitioner to prove (1) that he and the other transferors were in control of Investors *295 Trust Company immediately after the exchange, and (2) that the stock or securities received by each was "substantially in proportion to his interest in the property prior to the exchange." The author of this opinion, before whom the hearing took place, expressed agreement with petitioner's contention that, in determining whether petitioner and other stockholders of Investors Corporation participating in the exchange were in control of Investors Trust Co. immediately after the exchange, as such term is defined in section 112 (h) of the Revenue Act of 1936, [2] the stock owned by the participants before, as well as the stock acquired in the exchange, is to be taken into consideration. That views appears to be sound; and inasmuch as respondent now makes no contention to the contrary it will not be discussed further. This being the question toward which much of the evidence and argument was addressed, it was felt that petitioner should prevail. The parties, however, were given leave to file briefs. The question discussed therein is whether the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. *296 In United Carbon Company v. Commissioner, 90 Fed. (2d) 43, the Circuit Court of Appeals for the 4th Circuit held that although the difference in control exercised by the several transferors, as compared with their control after the transfer, was at most 1.36 percentum, nevertheless there was a substantial difference between the value of the assets possessed by the transferors before the exchange and the value of the stock received, amounting to a gain in one case of as much as 21.93 percent and in another to a loss of as much as 28.41 percent. It therefore concluded that the requirements of the statute were not met since the position of the transferors was not "substantially the same after as before-the exchange." Where the variation between the value of the assets transferred by each transferor and the stock received amounted to less than 1 percent, the exchanges have been held to meet the requirements of section 112(b) (5), supra. The Gladstone Corporation, 37 B.T.A. 1057, affd., 120 Fed. (2d) 153, cert. denied 315 U.S. 802; Hartford-Empire Co., 43 B.T.A. 113, affd., 137 Fed. (2d) 540, cert. denied *297 320 U.S. 787. American Compress & Warehouse Co. v. Bender, 70 Fed. (2d) 655. Because of the destruction of its records in the hurricane and flood in 1938, heretofore referred to in our findings, petitioner was unable to prove the interest of each of the transferor before and after the exchange. He was able to prove, however, how the interests of various groups of transferors (1st and 2nd preferred, convertible preferred, and common stockholders of Investors Corporation) were affected by the exchanges. This is contained in the schedule shown in our findings. From this schedule we are able to determine the maximum change which could be effected in th interest of any transferring stockholder under the plan as executed. The schedule discloses that the interest of the former owners of 1st preferred stock of Investors Corporation, in the aggregate value of the stock received, was 2.1629 percent greater than it was in the aggregate value of the stock transferred, and that the interest of the common stockholder was 1.5145 percent less, or, as computed by petitioner (see last column of schedule), there was a spread of 13 percent between the group which derived the *298 most benefit and the one which derived the least benefit from the exchange. Despite these changes in the respective interests of the transferors, petitioner urges that we should hold that the position of the transferors was substantially the same after as before the exchange. Just how much of a variation may be allowed is a question which need not be determined. It is sufficient to say our best judgment is, that where, pursuant to a plan of exchange duly executed, the members of one class of stockholders increase their interests 2.1629 percent while the interests of the members of another class are decreased to the extent of 1.5145 percent, the requirements of the statute, that the amount of stock and securities received by each transferor be substantially in proportion to his interest prior to the exchange, have not been met. We therefore hold that the Commissioner's determination may not be set aside. Cf. Cyrus S. Eaton, 37 B.T.A. 715, 723; B. Cohen & Sons Co., 42 B.T.A. 1137; Blair v. Commissioner, 91 Fed. (2d) 992; Ernest Kern Co., 1 T.C. 249, (App. 6 C.C.A. dismissed). Decision will be entered for the respondent. Footnotes
*. At $45 per share of Preferred and $40 per share of Common.↩
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. (a) General Rule. - Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section. (b) Exchanges Solely in Kind. - * * * * *
(5) Transfer to Corporation Controlled by Transferor. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange * * *↩
2. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(h) Definition of Control. - As used in this section the term "control" means the ownership of stock possessing at least 80 percentum of the total combined voting power of all classes of stock entitled to vote and at least 80 percentum of the total number of shares of all other classes of stock of the corporation.↩