## CHICAGO CEMETERY ASS'N v. UNITED STATES.

### No. 43286.

District Court, N. D. Illinois, E. D.
April 23, 1937.

Hopkins, Starr & Godman, of Chicago, Ill., for plaintiff.

Michael L. Igoe, of Chicago, Ill., for the United States.

HOLLY, District Judge.

This is a suit by the Chicago Cemetery Association to recover an alleged overpayment of income tax for the year 1926. The sole question presented here is the effect of a decision of the Board of Tax Appeals in 1933 in a proceeding entitled Chicago Cemetery Association v. Commis-

sioner, Nos. 28429 and 32932, as to the value on March 1, 1913, of divisions and sections of plaintiff's cemeteries.

In that proceeding, which involved the taxes due for the years 1920–1925, the Board of Tax Appeals fixed the March 1, 1913, value of the divisions and sections out of which plaintiff sold lots in 1926 (except as to some few lots and as to those the parties have stipulated the value.) If the decision of the Board in that case binds the Government in this case plaintiff is entitled to recover.

In that proceeding the Board, for the purpose of determining the income of plaintiff for the years 1920–1925, heard evidence and reached a conclusion as to the March 1, 1913, value of the sections and divisions out of which the present plaintiff sold lots in those years. It did not attempt to value each lot separately, and, as we understand it, the Commissioner does not now contend that such method should be used. It would hardly be a practicable method.

The value of lots and graves in a cemetery is not merely the cost of so many square feet of ground. The roads, including the paving, fencing, gateway, administration buildings, shrubbery, etc., all enter into the value and must be distributed over the property as a whole. In the present case, it appears that the cost of the improvements was allocated to the various sections. The Board in the former proceeding determined that the proper method for determining the 1913 value of the lots in question then was to value the sections and this it did. It was a proper method; the parties to this proceeding were parties to that; each had its opportunity to be heard, to put in its evidence, to argue its case.

Under these circumstances does the doctrine of res judicata apply in this case?

■■ "The doctrine of res judicata first definitely formulated in the Duchess of Kensington Case, embodies two main rules, which may be stated as follows: (1) the judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal. (2) Any right, fact, or matter in issue, and directly adjudicated upon or necessarily involved in the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject matter of the two suits is the same or not. These rules afford a logical and convenient method of dividing the numerous cases falling within the principle of res judicata * * * The sum and substance of the whole doctrine is that a matter once judicially decided is finally decided." 34 C.J. 742 et seq., 1154. Tait v. Western Maryland Ry. Co., 289 U.S. 620, 623, 53 S.Ct. 706, 707, 77 L.Ed. 1405, is to the same effect.

■ Both in the present case and the prior case heard by the Board of Tax Appeals, the same question was involved, the 1913 value of the sections out of which the lots involved in this controversy were sold. If the doctrine of res judicata is not to be applied, then each year there may be a new proceeding to determine the 1913 value of these sections, which would be nonsense.

The Government makes the further contention that the only matter the Board of Tax Appeals had jurisdiction to determine was whether there was overpayment, and hence its findings as to the value of the property as of 1913 is not res adjudicata in this proceeding. But to determine whether there had been overpayment it was necessary for the Board to find the value of the land. That was one of the questions necessarily determined in that case. The cases cited by the Government on this question are not in point. We may assume it is the law, as the Government contends, that the scope of estoppel of a judgment does not extend to any matter which was only incidentally cognizable or which came collaterally in question in the former case, but here the very essence of the issue involved in the proceeding before the Board of Tax Appeals in the former case was the value of the land out of which the lots involved in this case were sold.

An order will be entered accordingly on April 23, 1937.