ARUNDEL-BROOKS CONCRETE CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4291.   Promulgated March 7, 1945.

*William S. Hammers, Esq.*, for the petitioner.
*E. M. Woolf, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: This proceeding involves deficiencies in income tax determined by respondent for the years 1939 and 1940 in the respective amounts of $496.03 and $128.27. Petitioner claims an overpayment for the year 1940. The only item in controversy in this proceeding is the basis for the depreciation of petitioner's concrete mixing plant located at Sparrows Point, Maryland.

The parties submitted a stipulation of all the facts, which is herewith adopted as our findings of fact by reference.

Petitioner is a Maryland corporation, with its principal office at Baltimore, Maryland, and is engaged in the manufacture and sale of ready mixed concrete. Its income tax returns for the years in question were filed with the collector of internal revenue at Baltimore.

The Bethlehem Steel Co. operates a number of blast furnaces at its plant located at Sparrows Point, Maryland. The Maryland Slag Co. was incorporated in 1926 to process and market slag produced by blast furnaces and under an agreement with the Bethlehem Steel Co., executed February 23, 1926, obtained the exclusive right for a period of fifteen years thereafter to remove slag from the plant of Bethlehem Steel Co. at Sparrows Point. This agreement was superseded by a

new agreement executed January 1, 1938, which limited the right to the period beginning January 1, 1938, and ending December 31, 1945.

In January 1937, the Bethlehem Steel Co. was in need of large quantities of concrete for construction work and together with the Maryland Slag Co., the petitioner came to an agreement with it to erect and place in operation within sixty days a concrete mixing plant for supplying its needs on land of the Bethlehem Steel Co. adjacent to the plant of the Maryland Slag Co., from which processed slag for coarse aggregate was to be obtained and used in the concrete. The plant was erected at a cost of $39,766.13, and put in operation by April 30, 1937.

The Arundel Corporation of Baltimore, Maryland, during the calendar year 1937 owned all of the petitioner's outstanding capital stock. The Maryland Slag Co. had no sales organization of its own and its products were sold to and marketed by the Arundel Corporation, which owned 25 percent of the outstanding capital stock of the Maryland Slag Co. before and during the calendar year. 1937.

Petitioner's president, in his annual report to the stockholders of the corporation for 1936, submitted at the annual meeting of the stockholders held in January 1937, stated that an agreement had been reached with the Bethlehem Steel Co. and the Maryland Slag Co. for the erection at Sparrows Point of a premixed concrete plant having a capacity of 100 cubic yards per hour, that the Bethlehem Steel Co. had agreed to furnish the necessary land for the plant without cost to petitioner and to construct the necessary trackage, aggregate pits, and water lines, and to furnish free water and sand at $1 per ton when its equipment was available for that service, and that the Maryland Slag Co. had agreed on its part to furnish in their side-dump cars to the pits, at 90 cents per ton, slag of such gradation as required by petitioner, and had agreed further to pay for one-half of the cost of the plant, estimated at $25,000. A resolution adopted at the meeting of the board of directors on the same day authorized the expenditure.

On June 30, 1937, petitioner submitted to the Maryland Slag Co. a bill for $20,000 as its share of the cost of the concrete mixing plant and this sum was paid by the Maryland Slag Co. to petitioner by check on December 10, 1937. On the books of petitioner the $20,000 thus received was at first credited to the account representing the cost of the new plant and, subsequently, by adjustment, was credited to surplus. Depreciation at the rate of 10 percent was applied to the full cost of the mixing plant.

A proceeding before the Board of Tax Appeals relative to petitioner's tax liability for the calendar year 1937, Docket No. 101026, involved a question of the proper cost basis for depreciation and the useful life of petitioner's concrete mixing plant located at Sparrows

Point, Maryland. The evidence was presented in the form of a stipulation of facts, with accompanying exhibits. In that proceeding it was stipulated and agreed by the parties thereto that the plant was erected at a cost of $39,766.13 in 1937, and that in the redetermination of the petitioner's tax liability for the calendar year 1937 the depreciation of plant and equipment at Sparrows Point should be based on a useful life of 8¾ years. The point for determination by the Board in that proceeding was whether the $20,000 contributed by the Maryland Slag Co. to the erection of petitioner's concrete mixing plant should be included in the cost of the plant for depreciation purposes for the year 1937. The respondent, in computing petitioner's tax liability for 1937, had reduced the cost basis for depreciation by the aforesaid sum of $20,000. The Board, in an opinion promulgated September 25, 1941 (45 B. T. A. 178), held that the petitioner was entitled to depreciation on the amount of $19,766.13, thereby sustaining the action of the respondent in eliminating the sum of $20,000 from the depreciable base of the plant. On appeal, the United States Court of Appeals, Fourth Circuit, in a decision rendered July 30, 1942, (129 Fed. (2d) 762) held that the base for depreciation of the plant was $39,766.13, and reversed the decision of the Board. A decision was entered by the Board consistent with the Circuit Court's opinion on September 23, 1942. That decision became final.

The plant and equipment to which respondent's determination of allowable depreciation for the years 1939 and 1940 applies is the same plant and equipment as that referred to in the prior proceeding relative to the tax liability of petitioner for the year 1937. The respondent in determining the deficiencies for the years 1939 and 1940 here involved allowed depreciation on the mixer plant in question computed on a cost basis of $19,696.13 and a life of 8¾ years, and not on a cost basis of $39,766.13 as determined in the prior proceeding by the United States Circuit Court of Appeals. Respondent thus disallowed for the years involved in this proceeding, as he did for the year involved in the prior proceeding, as part of the basis for depreciation of the plant the amount of $20,000 contributed toward such cost by the Maryland Slag Co.

Petitioner contends that the decision of the Board in the prior proceeding involving the year 1937, under mandate from the Circuit Court of Appeals, holding that the $20,000 contributed toward the cost of the mixer plant by the Maryland Slag Co. should be included in the basis for depreciation of the plant, is res judicata of the same question presented in the instant proceeding. Respondent contends that res judicata does not apply for the reason that subsequent to the entering of the decision in the prior proceeding the Supreme Court, in Detroit-Edison v. Commissioner, 319 U. S. 98, handed down an

opinion in the light of which the opinion of the Circuit Court of Appeals for the Fourth Circuit hereinabove mentioned was obviously erroneous in respect of the question herein involved. Petitioner relies principally on the authority of *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620.

The only issue is whether the decision of the Circuit Court of Appeals as to the basis for depreciation of petitioner's plant is determinative for the years before us. If it is, petitioner must be sustained; if it is not, the respondent must prevail because of the decision in *Detroit-Edison* v. *Commissioner, supra*. Respondent contends that the decision of the Circuit Court of Appeals in the prior action is erroneous in the light of the *Detroit-Edison* case, *supra*. He argues that this is a change in the law as set out in the *Tait* case, and that the question is open for decision, citing *Blair* v. *Commissioner*, 300 U. S. 5. We think the petitioner's argument is well taken and that the previous decision of the Circuit Court of Appeals on the question is binding on the parties hereto. The change in law to which the *Tait* case referred meant a legislative change. Cf. *New Orleans* v. *Citizens Bank*, 167 U. S. 371; *Pryor & Lockhart Development Co.*, 34 B. T. A. 687. The cost basis of petitioner's plant at Sparrows Point, Maryland, for depreciation purposes has been judicially determined by the Circuit Court of Appeals and the Board of Tax Appeals. So far as the parties here are concerned, nothing has been changed except the taxable years. The conditions, facts, circumstances, evidence, and the statute pertaining to the basis for depreciation on petitioner's plant are the same. Whether the decision of the Circuit Court of Appeals is right or wrong is immaterial to the question of *res judicata*. The essential fact is that its decision has become final as between the parties hereto. *New Orleans* v. *Citizens Bank, supra; Pryor-Lockhart Development Co., supra*, and cases cited.

*Masterson* v. *Commissioner*, 141 Fed. (2d) 391, and *Netcher* v. *Commissioner*, 143 Fed. (2d) 484, cited by respondent, are distinguishable and are not in conflict with the views herein expressed. In the *Masterson* case the court held that a new decision of a state court interpreting the property rights of parties was a new fact to be considered with all the other evidence, all of which was in line with the decision of the Supreme Court in the *Blair* case, *supra*. We think that the court's decision in *Montgomery* v. *Thomas*, 146 Fed. (2d) 76, is in accord with our holding here. The case of *Seward* v. *Henricksen*, 135 Fed. (2d) 986, is distinguishable on the facts. Such language in that opinion as may appear to be in contradiction with our holding here was unnecessary to the decision therein. Cf. *Commissioner* v. *Western Union Telegraph Co.*, 141 Fed. (2d) 774; certiorari denied. The recent case of *Pelham Hall Co.* v. *Hassett*, 147 Fed. (2d) 63, is not in conflict with our holding here. The crux of that decision was that the rule

of *res judicata* could not be invoked to cover an issue not actually presented and litigated in the prior action. The discussion in that opinion about the soundness of the rule was conceded by the court to be beyond the scope of the decision on the question presented.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, concurs in the result.