**JONES v. TRAPP.**

No. 4097.

United States Court of Appeals
Tenth Circuit.

Dec. 30, 1950.

Helen Goodner, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack, A. F. Prescott and George D. Webster, Special Assts., on the brief), for appellant.

Charles H. Garnett and Ram Morrison, Oklahoma City, Okl. (John B. Dudley, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The first question on this appeal is whether appellee, M. E. Trapp, and his wife, Lou Strang Trapp, were business partners for income tax purposes in the taxable year 1941. The Commissioner determined that they were not and assessed a deficiency against Trapp, based upon adjusted income reported by them as partners. Trapp paid the tax and brought this timely suit against the Collector to recover the same, re-asserting the partnership. The Collector pleaded the former judgment in Trapp v. United States, 10 Cir., 177 F.2d 1, as an estoppel of the issue of partnership, and alternatively denied its existence for income tax purposes for 1941.

In Trapp v. United States, supra, we affirmed the judgment of the trial court denying the asserted partnership for the preceding taxable year 1940. The trial court in this case, however, took the position that the former judgment did not operate to estop the taxpayer from asserting the partnership for the taxable year 1941, on the grounds that the legal climate in which the former judgment was rendered had changed since Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L. Ed. 1659, and that additional facts on this record, when considered in the light of the philosophy of the Culbertson case, present-

ed new and different issues not foreclosed by the former judgment. An appraisal of the facts under the Culbertson case left no doubt in the mind of the trial court that a "partnership relationship between M. E. Trapp and Lou Strang Trapp existed from its inception in 1911, up to and including 1941, the year of the return in question here."

The doctrine of collateral estoppel by judgment is sparingly applied in income tax cases involving tax liability for different years. And, the former judgment operates as an estoppel "only as to those matters in the second proceeding which were actually presented and determined in the first suit. * * * a subsequent modification of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous" and its perpetuation result in an unjust disparity in the incidence of tax laws. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 720, 92 L.Ed. 898. See also Gillespie v. Commissioner, 10 Cir., 151 F.2d 903; Continental Oil Co. v. Jones, 10 Cir., 176 F.2d 519; Commissioner v. Texas Empire Pipe Line Co., 10 Cir., 176 F.2d 523.

The decisive issue in both cases is the same, that is, whether the Trapps were business partners for tax purposes in the respective years, 1940 and 1941. While the trial court in the former case did not have the clarifying benefit of the Culbertson case, it had been decided when the case was here on appeal. And, applying the realistic test of good faith emphasized as controlling there, we affirmed the findings of the trial court to the effect that there was no bona fide family partnership for income tax purposes in the year 1940. And see Graber v. Commissioner, 10 Cir., 171 F.2d 32; Eckhard v. Commissioner, 10 Cir., 182 F.2d 547.

The additional facts relied upon in the instant case as justifying a different result in tax liability for the two years, consist of letters written by the taxpayer to a bank in 1911 in connection with his application for credit, and Mrs. Trapp's testimony concerning their business relationship through the years. One of the

letters to the bank recited that the Trapps were trying to get into the municipal bond business; that Mrs. Trapp was interested in the business, and was furnishing her own separate collateral as security for the proposed loan with which to engage in business. But these facts are historical and were available in the former trial. "No new facts were tendered in this case which did not exist and were not available for production in the former case. The applicable and controlling facts remain the same—they are static, immutable, and therefore precisely identical for the purposes of estoppel." Gillespie v. Commissioner, supra, 151 F.2d at page 907. Cf. Tait v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405.

But even so, the taxpayer points to the fact that the former suit was between the taxpayer and the United States, whereas this suit is against the Collector of Internal Revenue in his personal capacity, and contends that since the suits are not between the same parties, the doctrine of estoppel is inapplicable, citing United States v. Nunnally Inv. Co., 316 U.S. 258, 62 S.Ct. 1064, 86 L.Ed. 1455. The Nunnally case affirmed Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828, to the effect that a judgment for a refund of income taxes in a suit against the Collector is not a bar to a later suit against the United States for additional refund of taxes for the same year paid to the same collector. The cases are based upon the concept that the United States was a stranger to the suit against the collector in his personal capacity, and not being in privity with him, was not bound thereby. Applying the reasoning there conversely to our case, it is suggested that the United States is a stranger to this suit, and the taxpayer is therefore not barred from maintaining it against the collector in his personal capacity on a different cause of action.

■ The effect of the Nunnally case was nullified by Subsection (d), Section 503, Revenue Act of 1942, Public Laws Chap. 619, 26 U.S.C.A. § 3772, 56 Stat. 956. See H. Rep. 2333, 77th Congress, Second Session, pp. 60-61, 172; and Senate Rep. 1631, 77th Congress, Second Session, pp. 247-248. But in any event, the rule of the Nunnally case is inapplicable in a suit against the collector, for "where a question has been adjudged as between a taxpayer and the government or its official agent, the Commissioner, the collector, being an official inferior in authority, and acting under them, is in such privity with them that he is estopped by the judgment." Tait v. Western Md. Ry. Co., supra, 289 U.S. at page 627, 53 S.Ct. at page 708, 77 L.Ed. 405. It follows, we think, by the reasoning invoked, that if the Collector would have been bound by the judgment against the United States, the taxpayer is likewise bound. We are of the opinion that the judgment in Trapp v. United States, supra, is conclusive of the issue of the asserted partnership between Trapp and his wife for the year 1941. In the eyes of the tax laws, they were not partners in 1940, and they were not partners in 1941.

■ Apart from the factual issue bearing upon the question of family partnership, the taxpayer contends that income derived from the production of oil from properties in the State of Texas, is, under the controlling law of that State, community income, and therefore taxable to the community in equal shares. That question was squarely put and squarely decided in Trapp v. United States, supra. We said, following Texas law as interpreted in Hammonds v. Commissioner, 10 Cir., 106 F.2d 420, 424; and Noble v. Commissioner, 10 Cir., 138 F.2d 444, that since the oil properties were acquired by the taxpayer with his separate funds, they remained his separate property "through all of its mutations and changes so long as it can be clearly * * * traced and identified." We sustained the trial court's classification of income attributable to the investment of his separate funds as separate income and income attributable to the community labor, talent and skill in the acquisition, development and management of the properties as community income. As to some of the oil properties, the trial court in the former case did not find that the taxpayer contributed any services in

connection with the acquisition, development or management, and that the net gain derived from these particular leases were therefore taxable to the taxpayer without division and we affirmed.

■ The taxpayer assails our analysis and application of Texas law, but we are convinced of its correctness, and we adhere thereto. Suffice it to say that under the law of Texas, oil and gas in place is realty, and its removal and sale amounts to a depletion of that part of the corpus. Stephens v. Stephens, Tex.Civ.App., 292 S.W. 290. And, since the proceeds from the sale of the oil represents a sale of a part of the realty, the income therefrom is separate income of the owner. Commissioner v. Wilson, 5 Cir., 76 F.2d 766; Welder v. Commissioner, 5 Cir., 148 F.2d 583; Merten's, Vol. 3, Sec. 19.16, p. 34. Cf. Commissioner v. Gray, 5 Cir., 159 F.2d 834; United States v. Harang, 5 Cir., 165 F.2d 106. There is nothing on this record to indicate what, if any, of the reported income is attributable to the community labor, skill and talent. We therefore have no occasion to consider whether the separate income became unidentifiably commingled with community income. See McFaddin v. Commissioner, 5 Cir., 148 F.2d 570.

The taxpayer again invokes a decision of the Board of Tax Appeals in 1935, holding income derived from these same oil properties to be community income. The decision was interposed in the former case, and we held that since it was based upon a compromise agreement of the parties, it failed to "constitute an effective juridical determination of any litigated right." We adhere to that conclusion.

Another partnership for the taxable year 1941 is asserted between the taxpayer, his wife and son, M. E. Trapp, Jr. The arrangement, called M. E. Trapp Associated, originated with a written agreement, entered into in the latter part of 1940 between the parties, to become effective on January 1, 1941. After reciting that the husband and wife had always engaged in business as partners, the agreement went on to recite that the son, now becoming of age, was desirous of going into some kind of business with them. The parties thereupon declared their intention to engage in some business which might prove mutually inviting and acceptable. The taxpayer was made the general manager and it was agreed that the profits would be divided 40 per cent to the taxpayer, 40 per cent to his wife, and 20 per cent to the son. Soon after the effective date of the contract, the son entered the military service, and about that time, or a little later, the taxpayer, representing the partnership, entered into a joint venture agreement with the Tankersley Construction Company. The purpose of this agreement was to secure and execute four construction contracts with the United States government aggregating over $3,000,000.00. No cash capital was contributed by any of the parties, but the partnership gave a note to the bank, signed by the taxpayer and secured by property belonging to the taxpayer or the taxpayer and his wife. The business affairs incident to the execution of these contracts were conducted primarily by the taxpayer as general manager of the partnership, and the proceeds therefrom constituted the only taxable income of the asserted partnership during the taxable year 1941. The son was discharged from the army in September 1941. He was immediately married, and after a short trip, returned to Oklahoma City, put a desk in his father's office, and performed such service as he was asked or told to do for the remainder of the taxable year.

■ Although the business affairs were conducted by the Senior Trapp, mostly in in his own name, the trial court took the view that this was done "as a matter of convenience", and concluded that it was a valid partnership for all purposes; that the income from the construction contracts was partnership income distributable to the partners in accordance with the agreement. The government points to the fact that no income under the contract was distributed for that year; that Mrs. Trapp contributed nothing, and that the son was no more than a nominal hired hand. But nevertheless, the contract having been entered into for the purpose of

engaging in an undetermined business, and none of the parties actually having contributed any capital, we cannot say in the face of the trial court's conclusions that they did not act in good faith, and that the partnership was not bona fide.

A further question is presented concerning whether the partnership return should be on a cash or accrual basis, the taxpayer contending that it should be on a cash basis. The Commissioner determined that it should have been on an accrual or percentage of completion basis and thus increased the reported distributable income $20,610.35, representing 5/14ths of an estimate under a government contract payable January 10, 1942.

Holding with the taxpayer, the trial court was of the opinion that he intended to prepare his return on a cash basis, and so prepared and submitted it. The court specifically found that the books were kept in a manner to correctly reflect the conditions of the business, the gross income and deductions, to enable the ascertainment of net income and to whom it was distributable. The additional assessment is computed on the basis of a so-called "percentage of completed contract method of accounting."

Section 41, Title 26 U.S.C.A., provides in material part that the "net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." See Treasury Regulations 111, Sec. 29.41–2.

All of the government witnesses testified that the partnership books were kept predominately on an accrual basis, but none of them denied that they did clearly reflect the income, or that it could have been reported on a cash basis. The taxpayer testified that he intended to return it on a cash basis, and we cannot say that the

trial court's holding in that respect is clearly erroneous.

The case is reversed and remanded with directions to enter judgment with the views herein expressed.