JOE ESCO SOUTH–WEST TIRE
COMPANY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

OKLAHOMA BANDAG & SUPPLY
CO., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. CIV–80–1377, CIV–80–1378.

United States District Court,
W.D. Oklahoma.

Dec. 21, 1983.

George F. Saunders, Oklahoma City, Okl., for plaintiff.

William W. Guild and Rick K. Disney, Tax Div., Dept. of Justice, Dallas, Tex., and Eleanor D. Thompson, Asst. U.S. Atty., Oklahoma City, Okl., for defendant.

## OPINION

DAUGHERTY, District Judge.

Plaintiff-taxpayers filed these consolidated actions for refunds of taxes paid for their fiscal years ending in 1973, 1974 and 1975. Generally, a corporation was entitled for those tax years to a "surtax exemption." However, if two or more corporations were members of a "controlled group of corporations," they would be taxed as if they were a single corporation and they would have to share a single surtax exemption. In this case, the United States contends that the two Plaintiffs are members of a "controlled group of corporations" because they are members of a "brother-sister controlled group." The statute, 26 U.S.C. § 1563, defines these terms as follows:

Sec. 1563. DEFINITIONS AND SPECIAL RULES.

(a) CONTROLLED GROUP OF CORPORATIONS.—For purposes of this part, the term "Controlled group of corporations" means any group of—

\* \* \* \* \* \*

(2) Brother-sister controlled group.—Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing—

(A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and

(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

The ownership of the Plaintiffs, each of which has only one class of stock, voting common, is as follows:

| Shareholder | Joe Esco South-West Tire Co. | Oklahoma Bandag & Supply Co. |
|---|---|---|
| Joe W. Esco | 79% | 79% |
| George Saunders | 14% | –0– |
| John Holcomb | 7% | –0– |
| Hanna Byrd | –0– | 7% |
| C. L. Welch | –0– | 7% |
| Don Wilson | –0– | 7% |

Also included with the Plaintiffs in the alleged controlled group are Joe Esco Tire Co. and 89'er Petroleum Co., both of which are 100 percent owned by Joe W. Esco.

Plaintiffs admit that Joe Esco Tire Co. and 89'er Petroleum Co. are, by themselves, a brother-sister controlled group, but they deny that the two Plaintiffs herein are also in that group. The parties agree that the 50 percent test of 26 U.S.C. § 1563(a)(2)(B) applies to the Plaintiffs. But before the Court may find the Plaintiffs to be members of the "group," it must also find that the 80 percent test of 26 U.S.C. § 1563(a)(2)(A) applies to them. The United States concedes that the "80% of voting power" test does not apply, but it asserts that the "80% of value" test does apply. The Plaintiffs assert that the "va-lue" of a stockholder's shares is in direct proportion to the number of shares which he holds and that therefore Joe Esco owns only 79 percent of the "value." The United States, on the other hand, contends that there is a "control premium" which adds value to Esco's 79 percent and that it raises the "value" of Esco's shares to at least 80 percent of the total value of each Plaintiff-corporation.

Both of the Plaintiffs have already litigated the issue of their "brother-sister controlled group" status for their taxable years 1976 in the U.S. Tax Court in *Joe Esco South-West Tire Co. v. Commissioner*, T.C.Memo No. 82083 (February 18, 1982). The Plaintiffs assert that they conceded the 50 percent test in the Tax Court case and that therefore, under the statute, they could not have avoided a finding that they were members of a brother-sister controlled group unless they won both the "80% of voting power" and the "80% of value" tests. The United States contends, however, that in the Tax Court case only the "80% of voting power" test was actually litigated, to the exclusion of the "80% of value" test.

The parties have briefed these questions, which, in the order in which they should be decided, are:

1. Does the Tax Court judgment collaterally estop the United States from relitigating the issue of the "value" of Joe Esco's stock in the Plaintiffs?

2. If not, may the "value" of Joe Esco's stock, as the term "value" is used in 26 U.S.C. § 1563(a)(2)(A), include a "control premium"? If so, then the question must be tried whether such "control premium," if any, raised the value of Joe Esco's stock to at least 80 percent of the value of all shares during the taxable years in question.

As the Court determines the question of collateral estoppel in the affirmative in favor of the taxpayers, it does not reach the substantive question or express any opinion thereon.

■ The doctrine of collateral estoppel is based on four identities. The prior and subsequent actions must have the same parties (or their privies), facts, applicable law, and issues. These identities are applied to tax cases. *C.I.R. v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The parties in the instant case were parties in the Tax Court case, and the applicable statutory law has not changed and there has been no significant case law development since the Tax Court decision. *C.I.R. v. Sunnen*, 333 U.S. at 600, 68 S.Ct. at 720.

## THE SAME FACTS

The facts relevant to the collateral estoppel issue have been fully stipulated, and the issue has been submitted for decision. The stipulation states *inter alia* that neither party wishes to present any further evidence on the collateral estoppel issue. It also states (1) that the percentages of stockholdings in the Plaintiffs were as recited above for the tax years involved herein, (2) that the constructive ownership provisions of Section 1563(e) of the Internal Revenue Code of 1954 did not apply to the Plaintiffs, and (3) that the persons owning stock in the Plaintiffs and the relative percentages of their ownership did not change from the tax years involved herein (1973, 1974, and 1975) to the tax year involved in the Tax Court case (1976). The parties also stipulate to the record of the Tax Court proceedings, that the parties presented no evidence regarding any control premiums to the Tax Court, and that:

6. The total value of each corporation changes from time to time, and most particularly from year to year, as the result of operations.

The question is whether there was any significant change in the controlling facts from the taxable years involved herein to the taxable year involved in the Tax Court

case, or whether the "inseparable facts" test of *C.I.R. v. Sunnen*,[1] 333 U.S. at 601, 68 S.Ct. at 721, is satisfied. If the value percentage of shares and any control premium stayed constant, although their dollar values changed (proportionally) with any yearly changes in the total values of the corporations, then the value percentages of the shareholders' shares also stayed the same and the controlling facts of the two cases are the same. How is stipulation number 6 relevant to the value percentage of Mr. Esco's shares?

The United States argues[2] that the "all relevant factors affecting the fair market value" approach to valuing the stock of closely held corporations, under Rev.Rul. 59–60, 1959–1 Cum.Bull. 237, applies to the instant question of the Plaintiffs' status as brother-sister corporations. From this and the stipulated fact that the total value of the corporations changes from year to year, the United States argues that the facts involved in 1976 were not identical to the facts existing in earlier tax years. However, assuming that Rev.Rul. 59–60, which expressly applies to valuations for estate and gift tax purposes, applies in cases such as the instant one, and assuming that it reasonably interpreted the word "value" as used in Section 1563(a)(2), its limited references to controlling interests and the idea of control premiums in Section 4(e) and (g) simply do not even suggest that the percentage size of a control premium varies, either up or down, with the varying value of the whole corporation. The Court concludes that the fact that the total value of a corporation changes from year to year, by itself, without evidence showing how that affects the value percentage of the control premium and therefore the value percentages of the shareholders' holdings, is not probative as to whether such value percentages change from year to year.

1. Although the Supreme Court held in *Sunnen* that the relevant facts must be "inseparable," i.e., absolutely identical (holding that identical but separate contracts were not "inseparable facts"), the "inseparable facts" test seems to have been ignored in *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), and is therefore brought into question. *Starker v. United States*, 602 F.2d 1341, 1346 (9th Cir.1979).

2. Defendant's Brief, September 20, 1982.

However, the stipulation does contain evidence relevant to whether the facts herein are identical to the facts involved in the Tax Court case. That evidence is in the fact that the stockholders and their percentages of ownership stayed the same during the relevant years. The evidence herein as to the percentages of Mr. Esco's ownership of the value of the Plaintiff corporations is the same as the evidence on that issue before the Tax Court, and the Court therefore finds that the controlling facts are the same herein as they were in the Tax Court case.[3]

In so ruling, the Court does not neglect the burden of proof. As the proponents of the doctrine of collateral estoppel, the Plaintiffs have the burden to prove by a preponderance of the evidence the elements to sustain the application of that doctrine. See *Lea, Inc. v. C.I.R.*, 69 T.C. 762, 765 (1978). The Court finds and concludes that by entering into the stipulation herein, the Plaintiffs have satisfied that element of the doctrine which requires that there be no

subsequent modification of the controlling significant facts, the facts essential to the Tax Court's judgment, which are sufficiently similar to the facts in the instant case.[4]

## THE SAME ISSUE

This leaves the question of whether the issue or matter to be decided in the instant action is the same as an issue or matter decided in the Tax Court case. The Tax Court case is res judicata only as to the year 1976, *C.I.R. v. Sunnen*, 333 U.S. at 598, 68 S.Ct. at 719, but as to a different tax year, in which the claim is separate and different, it is a basis for collateral estoppel but:

> ... only as to those matters in the second proceeding which were actually presented and determined in the first suit. Collateral estoppel operates, in other words, to relieve the government and the taxpayer of "redundant litigation of the identical question of the statute's application to the taxpayers' status."

---

3. The collateral estoppel issue has been submitted to the Court on the basis of a stipulation, not on a motion for summary judgment. As noted, the parties have no evidence outside the stipulation which they wish to present on the collateral estoppel issue. Although submissions upon stipulations are not a subject of the Federal Rules of Civil Procedure or our Local Rules, not only are they a common tool of this Court, but also the form of the stipulation herein conforms to Rule 91 of the Rules of Practice and Procedure of the United States Tax Court (Tax Court Rules) and shows that counsel herein are familiar with such submissions under Rules 91, 122, and 149(b) of the Tax Court Rules, which expressly distinguish such submissions from motions for summary judgment under Rule 121 of the Tax Court Rules. Such stipulations constitute admissions on both sides and, unless known to the Court to be incorrect, must be accepted by the Court as is done herein. *Cf. Stubblefield v. Johnson-Fagg, Inc.*, 379 F.2d 270, 272 (10th Cir.1967). And, such submissions upon stipulations may form the basis for a judgment on the merits. *Fairmont Aluminum Co. v. C.I.R.*, 222 F.2d 622, 625–627 (4th Cir.1955), *cert. denied*, 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955); 1B Moore's Federal Practice, ¶ 0.422[2] n. 15 and text; *cf. Trapp v. United States*, 177 F.2d 1, 5 (10th Cir.1949).

4. *Montana v. United States*, 440 U.S. at 158–162, 99 S.Ct. at 976–978 (application of State tax law to Federal contractors); *Tait v. Western Mary-*

*land Ry. Co.*, 289 U.S. 620, 623, 53 S.Ct. 706, 707, 77 L.Ed. 1405 (1933) (deductibility of certain amortized amounts); *Alexander v. Commissioner*, 224 F.2d 788, 792–793 (5th Cir.1955) (held, taxpayer may show that daughter had greater participation in business in subsequent tax year to show change in partnership status); *Parker v. Westover*, 221 F.2d 603, 605 (9th Cir.1955) (where the facts are the same, but one party puts a different stress on certain evidence, held, there is no change in the significant facts); *Gemological Institute of America v. Riddell*, 149 F.Supp. 128, 129 (S.D.Cal.1957) (educational institution exemption); *Estate of Harold S. Davis v. C.I.R.*, 22 T.C. 807, 819–820 (1954) (prior holding that employee trust was exempt in 1944 was not conclusive but persuasive as to year 1949 where many questions of fact and law were the same and prior court had all the facts before it up to 1947); *Rio Farms, Inc.*, T.C. Memo 1955–306 (exempt status as charitable institution). Collateral estoppel was not applied per se in *Gemological Institute of America, supra*, but the result was the same, the Court reasoning:

> Without considering this decision as determinative of the issue as to the years before us, it is well to start with it in order to determine whether the character of the institution was changed in subsequent years.

*Tait v. Western Md. R. Co.*, 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405. *C.I.R. v. Sunnen*, 333 U.S. at 598–599, 68 S.Ct. at 719–720. What is a "matter" or "issue" that was decided in the prior case? This quotation suggests that it is "the statute's application to the taxpayers' status."

[2] Is this a question of fact or a question of law? It's a question of fact. See *C.I.R. v. Sunnen*, 333 U.S. at 601, 68 S.Ct. at 721; *Adolph Coors Co. v. C.I.R.*, 519 F.2d 1280, 1283 n. 1 (10th Cir.1975) (quoting Restatement, Judgments § 68(2) (1942); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 (5th Cir.1971). The Supreme Court has said that the doctrine "makes conclusive in subsequent proceedings only determinations of fact, and mixed fact and law, that were essential to the decision." *Yates v. United States*, 354 U.S. 298, 336, 77 S.Ct. 1064, 1086, 1 L.Ed.2d 1356 (1957). See *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982), citing *Montana v. United States, supra*, 440 U.S. at 153, 99 S.Ct. at 973, and *Parklane Hosiery v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). It does not apply to, and parties are not barred from relitigating, unmixed questions of law in successive actions involving substantially unrelated claims upon a different demand. *Montana v. United States, supra*, 440 U.S. at 162, 99 S.Ct. at 978. Rather, where "a fact, question, or right" has been litigated in the prior case, it applies even though the prior decision was "reached upon an erroneous view or by an erroneous application of the law." *Id.; Allen v. McCurry*, 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980); *see Tait v. Western Maryland Ry. Co., supra*, 289 U.S. at 625–626, 53 S.Ct. at 707–708. The Supreme Court said in *Yates v. United States, supra*, 354 U.S. at 338, 77 S.Ct. at 1087:

The normal rule is that a prior judgment need be given no conclusive effect at all

unless it establishes one of the ultimate facts in issue in the subsequent proceeding. So far as merely evidentiary or "mediate" facts are concerned, the doctrine of collateral estoppel is inoperative. *The Evergreens v. Nunan*, 141 F.2d 927 [2nd Cir.1944, Hand, J.]; Restatement, Judgments § 68, comment *p*.

*The Evergreens*, a tax case, is the leading case on the question of what kind of "issue" a prior decision may preclude a party from relitigating. Judge Hand distinguished therein between "ultimate facts," which are facts "upon whose combined occurrence the law raises the duty, or the right, in question," from "mediate data," which are merely evidentiary facts or facts from which the ultimate facts may be inferred. A fact may be mediate in one case and ultimate in another, but, as *The Evergreens*, like the instant case, involved a fact which was ultimate in the prior case, he did not have to decide the question of whether mediate facts decided in the prior case may be relitigated in the subsequent case. The holding of the case is that the "issue" that may or may not be precluded in the second case must be an ultimate fact in the second case.

This analysis is a better approach for purposes of this case to the question of what is an "issue" for collateral estoppel purposes than that which refers to "questions of fact or mixed fact and law." Adequate analysis can separate the questions of law in mixed questions of law and fact, leaving the questions of fact upon which liability for additional tax depends. This approach should help the Court satisfy the principle that the doctrine of collateral estoppel should be applied narrowly in tax cases. *Trapp v. United States, supra*, 177 F.2d at 4.[5]

In the instant case, the "issue" or ultimate fact to be determined is the percentages of the total value of the Plaintiff

---

**5.** The Court notes that the Supreme Court in its first application of the doctrine in a tax case favored the taxpayer and said that the doctrine "applies with equal force to the sovereign's de-

mands and the claims of private citizens." *Tait v. Western Maryland Ry. Co., supra*, 289 U.S. at 624, 53 S.Ct. at 707.

**998**

corporations possessed by their shareholders' holdings, particularly Joe Esco's 79 percent. Once this single ultimate fact is determined, the Court, by applying pertinent rules of law, can decide whether the Plaintiff corporations are liable for the assessed additional tax or not. Hence, the only issue or ultimate fact to be determined by the finder of fact herein is the "percentages of value" fact. The others are expressly or impliedly stipulated or are pure rules of law. In the instant case, the parties have, as indicated, stipulated as to the relevant percentages of "ownership." Thus, they agree that the 50 percent test favors the United States and that, given the Supreme Court's ruling in *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982), the "80% of voting power" test favors the taxpayers.[6]

Clearly, the mixed questions of whether Plaintiffs were entitled to separate surtax exemptions, whether they were members of a brother-sister controlled group, and whether the 80 percent test applied were all litigated in the Tax Court, as the Tax Court identified "the issue" for its decision thus:

> The only issue for our decision is whether Petitioners were members of a brother-sister controlled group of corporations, as that term is defined in section 1563(a)(2).

But, for the purpose of applying the doctrine of collateral estoppel, was the ultimate fact of the "percentages of value" actually "presented and determined" there? The essence of the Government's position is that this question of fact was not presented and determined there because the efforts of counsel for both sides and the Tax Court were directed at the purely legal question that was resolved in *Vogel Fertilizer Co.* But the fact that that question of law was decided by the Tax Court does not suggest that nothing else was decided in the Tax Court case. On either the pleadings or the parties' attorneys' statements of the issues, the "percentages of value" question was necessarily and actually in issue.[7] The Commissioner and the taxpayers filed a stipulation as

---

**6.** The rule of *Vogel Fertilizer* is that the group of five or fewer shareholders, for purposes of the 80 percent test, does not include a shareholder who does not own any shares in one of the members of the alleged brother-sister controlled group of corporations. In the instant case, the only shareholder who owns shares in all of the alleged member corporations is Joe W. Esco. Given the Government's concession that Esco's ownership of 79 percent of the voting shares results in his owning only 79 percent of the "voting power," the application of the "80 percent of voting power" test in favor of the taxpayers follows as a matter of law.

**7.** As indicated, the Court views the Tax Court petitioners' allegation of error in the Commissioner's determination that they were members of a brother-sister controlled group of corporations as necessarily raising certain fact questions, including the "percentages of value" question. If a petitioner, who has the burden of proof, intends to win as to the 80 percent test, as these petitioners had to do, it must prove both this fact *and* the "percentages of voting power." The Commissioner only needs one of them to win. Hence, the dual "value" issue was necessarily raised by the taxpayer-petitioner and would tend to be actually raised unless it was taken out of contention in whole or in part by a stipulation or other admission.

Further, the Tax Court is obliged to sustain the Commissioner's determination if it knows of *any* theory, whether stated in the deficiency notice or not, on which it is sustainable. *Helvering v. Gowran*, 302 U.S. 238, 245–246, 58 S.Ct. 154, 157–158, 82 L.Ed. 224 (1937); *King v. United States*, 641 F.2d 253, 259 (5th Cir.1981); *Blansett v. United States*, 283 F.2d 474, 478 (8th Cir.1960). It is immaterial whether the Commissioner's theory for the deficiency determination is correct or not; "the taxpayer has the burden of showing that the assessment is wrong on any proper theory." *Bernstein v. C.I.R.*, 267 F.2d 879, 881 (5th Cir.1959). And the Court has been unable to find any authority limiting a Tax Court petitioner to raising, as his issues, the reasons which the Commissioner gives in his deficiency notice for his determination of deficiency. Hence, although in Exhibit A to his notices of deficiency for the tax year (1976) involved in the Tax Court cases (as well as, presumably, for the tax years 1973–75 involved herein) the Commissioner stated only "voting power" and "voting stock" percentages as his grounds for finding the petitioners to be brother-sister corporations, the Tax Court (or the Court in the instant cases) was not limited to that issue.

to the percentages of "ownership" in the same percentages as stipulated herein. There was no stipulation as to the percentages of "value". This issue necessarily remained outstanding. Then, counsel for the Commissioner told the Tax Court as he introduced the stipulation of facts into evidence, that the consolidated cases were "fully stipulated," which meant that neither party intended to adduce additional evidence, although the stipulation reserved the right to do so.

In his brief in the Tax Court, the Commissioner stated his requested findings of "ultimate facts" partly in terms of "value" as follows:

Respondent request [sic] the Court to find the following *ultimate facts:*

5. The same five or fewer persons in the tax years at issue owned at least eighty percent of the total *value* of shares of Joe Esco South-West Tire Co., 89er Petroleum Co., Inc., and Oklahoma Bandage [sic] & Supply Co. (Stip. para. 4).

6. Joe W. Esco owns more than 50% of the total *value* of shares of Joe Esco South-West Tire Co., 89er Petroleum Co., Inc., and Oklahoma Bandage [sic] & Supply Co. (Stip. para. 4).

7. Petitioners Joe Esco South-West Tire Co., 89er Petroleum Co., Inc., and Oklahoma Bandage [sic] & Supply Co. *are members of a brother-sister controlled group* of corporations as defined in Section 1563(a)(2). [Emphasis added]

The taxpayers responded in their answer brief by requesting a finding in terms of "value" as follows:

Alternatively, the Petitioners request the Court to find that 80% or more of the control, *or value,* of Joe Esco South-West Tire Co. and Oklahoma Bandag & Supply Co. is not owned by the same persons who own 50% or more of the stock of Petitioners and Joe Esco Tire Co. taking into consideration their identical ownership. [Emphasis added]

In its opinion the Tax Court, first taking the questions of law out, stated its finding in terms of "value":

During the relevant tax years, the total *value* [emphasis added] of shares of all classes of stock in the Petitioners was held by the following individuals in the indicated percentages:

|  | Joe Esco South-West Tire Co. | 89er Petroleum Co. | Oklahoma Bandag & Supply Co. |
|---|---|---|---|
| Joe W. Esco | 79% | 100% | 79% |
| George Saunders | 14% | — | — |
| John Holcomb | 7% | — | — |
| Hanna Byrd | — | — | 7% |
| C.L. Welch | — | — | 7% |
| Don Wilson | — | — | 7% |

The Tax Court, like the Court in the instant case, abated its cases pending the outcome of *Vogel Fertilizer Co.* in the Supreme Court. After stating the finding quoted above and reciting the rule in *Vogel Fertilizer Co.* and the Tax Court's own post-*Vogel* case, *B & M Investors Corp. v. Commissioner,* 78 T.C. 165 (1982), it stated, in essence, that no shareholder except Joe W. Esco could be counted as a member of the five or fewer person group, and therefore the taxpayers were not members of a brother-sister controlled group of corporations and were each entitled to a full surtax exemption.

Based on these facts, this Court concludes that the Tax Court did actually decide the ultimate fact question of the percentages of value. The Government's argument that the "voting power" issue only, to the exclusion of the "value" issue, was litigated and decided must be rejected for several reasons. First, the fact that the Commissioner, as shown by his brief in the Tax Court case, clearly treated the issue of value as very much alive. Second, the taxpayers responded in their answer brief in the same terms. Third, examination of Section 1563(a)(2)(A) reveals that if the taxpayer is to win on the basis of the 80 percent test (as he did in the Tax Court case), the taxpayer must win both the "voting power" test and the "value" test. Hence, the taxpayers' petitions in the Tax Court as well as statements of the issues thereafter, all viewed in light of the statutory language, show that it was necessary and essential to the Tax Court's decision that the percentages of value be deter-

mined. Finally, the Tax Court's decision was stated in terms of the "percentages of value", and was in favor of the taxpayers, and the Commissioner allowed the Tax Court decision to become final.

The Commissioner could have conceded the "value" issue to the taxpayers and litigated only the "voting power" issue. This he did not do. Now, having requested and gotten findings in terms of "value," the Commissioner will not be heard to argue that "value" was not litigated and decided while "voting power," which is not mentioned in either the Commissioner's brief or the Tax Court's opinion, was litigated and decided. The identical question of ultimate fact in issue herein was put in issue in the Tax Court, was necessary and essential to the resulting judgment, was actually litigated by the parties, and was actually decided by the Court. Hence, the Court concludes that the "identical issue" requirement of the doctrine of collateral estoppel is satisfied. See *James Talcott, Inc. v. Allahabad Bank, Ltd., supra,* 444 F.2d at 458–460; *The Evergreens v. Nunan, supra,* 141 F.2d at 929; *Professional Construction Consultants, Inc. v. Grimes,* 552 F.Supp. 539, 544 (W.D.Okl. 1982).

The United States argues herein that by virtue of the stipulation in the Tax Court case, the Commissioner in effect stipulated as to the ultimate fact question of value. The Court can find no stipulation to that effect, and this argument contradicts the Commissioner's express language in his brief pressing the value issue. The Commissioner did not expressly abandon that issue, as in *Adolph Coors Co. v. C.I.R., supra,* 519 F.2d at 1283, and he did not expressly stipulate to an issue of ultimate fact and an agreed judgment, as in *United States v. International Building Co.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953) (the issue of liability) or *Trapp v. United States,* note 3 *supra.* Rather, what happened in the Tax Court case is that the Commissioner used all the evidence he wanted to use in the stipulation and then relied on it. *See* Rule 149(b), Tax Court Rules. Now, having failed to defend an issue with all of the evidence he had, he desires to present evidence in another case on the same question of ultimate fact, but he is barred from doing so by the doctrine of collateral estoppel. *Fairmont Aluminum Co. v. C.I.R.,* note 3 *supra,* 222 F.2d at 625–627; *Jones v. Trapp,* 186 F.2d 951, 953–954 (10th Cir.1950); *Lea, Inc. v. C.I.R.,* 69 T.C. 762, 769 (1978); *cf. Lujan v. United States Department of the Interior,* 673 F.2d 1165, 1168 (10th Cir.1982). Were this Court now to try the issue of "value", should it entertain evidence which could have been presented in the Tax Court to prove the issues necessarily litigated and decided there? In *Jones v. Trapp, supra,* Judge Murrah wrote:

> The decisive issue in both cases is the same, that is, whether the Trapps were business partners for tax purposes in the respective years, 1940 and 1941. * * But these facts are historical and were available in the former trial. "No new facts were tendered in this case which did not exist and were not available for production in the former case. The applicable and controlling facts remain the same—they are static, immutable, and therefore precisely identical for the purposes of estoppel." *Gillespie v. Commissioner, supra,* 151 F.2d [903] at page 907 [10th Cir.1946]. Cf. *Tait v. Western Md. Ry. Co.,* 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405.

Where, as here, the evidence to be adduced in the subsequent case includes all of the evidence introduced or which could have been introduced in the prior case, where the subsequent case involves the application of the same rule of law (in fact, in the instant case, the same clause of the same subparagraph of the same statute) as that involved in the prior proceeding, where pretrial preparation and discovery in the first proceeding could reasonably be expected to have embraced the evidence to be presented in the second, and where the two claims are virtually identical and both existed at the time of the prior proceeding, then the "issue" in the subsequent proceeding has been decided in the prior proceeding. *See*

*Starker v. United States, supra,* 602 F.2d at 1344, following Restatement (Second), Judgments, Tentative Draft No. 4, § 68 (1977). Further, the Court is satisfied that the Tax Court decided the "value" issue expressly and not by "necessary implication," *see Texas-Empire Pipe Line Co. v. C.I.R.,* 10 T.C. 140, 151 (1948), *affirmed* 176 F.2d 523, 526 (10th Cir.1949).

In arguing the substantive "value" issue in the instant case, the United States cites two cases to support the proposition that a "control premium" is a factor in determining the ultimate fact issue of "value." *Dahlgren v. United States,* 553 F.2d 434, 439–440 (5th Cir.1977); *Trotz v. Commissioner,* 361 F.2d 927, 930 (10th Cir.1966). Assuming that a "control premium" is such a factor, evidence of it is merely additional evidence of the ultimate fact of the "percentages of value." The existence and amount of a "control premium" are evidentiary facts or "mediate data." They are not ultimate facts. The question herein of whether they are relevant to prove the ultimate fact is merely a question of evidence and that they may not have been specifically decided by the Tax Court does not mean that the Tax Court did not decide the ultimate fact question. *Yates v. United States,* quoted *supra.*

■ The issues in the instant consolidated cases having been fully decided in the Tax Court, this Court concludes that the Plaintiff-taxpayers are not members of a brother-sister controlled group of corporations and are therefore each entitled to a full surtax exemption for their fiscal years ending in 1973, 1974 and 1975.

Separate forms of judgment will be entered.