**EEL RIVER SAWMILLS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–269C.**

United States Court of Federal Claims.

Feb. 4, 1993.

---

Wesley R. Higbie, San Francisco, CA, for plaintiff.

Bryant G. Snee, U.S. Dept. of Justice, Civ. Div., Washington, DC, with whom were Sharon Y. Eubanks, Asst. Director, David M. Cohen, Director, and Stuart M. Gerson, Asst. Atty. Gen., for defendant. Jeff Handy, U.S. Dept. of Agriculture, Washington, DC, of counsel.

## OPINION

SMITH, Chief Judge.

This dispute is before the court on plaintiff's motion for summary judgment.

Plaintiff, Eel River Sawmills, Inc. (Eel River), brought this action pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–13 (1988), and the Tucker Act, 28 U.S.C. § 1491 (1988), asserting that it is entitled to pay a Flat Rate for timber harvested under two contracts with the United States Forest Service (Forest Service). Plaintiff actually paid a higher rate based upon the index designated in both contracts. In support of its assertion, plaintiff argues that this court's decision in *Arcata Forest Prods. Co. v. United States*, 18 Cl.Ct. 93 (1989), *modified*, August 25, 1989, *aff'd*, 915 F.2d 1584 (Fed.Cir.1990), precludes the government from relitigating the availability of a replacement price index. Defendant counters that summary judgment is not appropriate because the issue of the availability of a suitable replacement index was never litigated in *Arcata*, and because plaintiff is equitably estopped from arguing for the applicability of the Flat Rate provision of the contract. Based on the briefs submitted, the caselaw and after hearing oral argument, the court grants plaintiff's motion for summary judgment.

### FACTS

Eel River and the Forest Service are parties to two contracts for the sale of national forest timber. The first contract, the Spout Timber Sale, was entered into by the parties on August 12, 1977 and involves certain timber located in the Six Rivers National Forest on the North Coast of California. The second contract, the Skull Timber Sale, was also for the sale of timber from Six Rivers National Forest and was entered into on October 26, 1981 by Louisiana–Pacific Corporation and the Forest Service. Eel River acquired Louisiana Pacific's rights and obligations under a third party agreement, approved by the Contracting Officer on October 27, 1987.

Both contracts are on the Forest Service Standard Form 2400–6, Timber Sales Contract, and provide that the purchase price paid for Douglas fir logs is to be adjusted over the course of the contracts. That adjusted rate is calculated under Standard Provision B3.2.[1], which references an external index. In Specific Condition A6 of both contracts, the Western Wood Products Association (WWPA) Inland Dry Douglas Fir–Larch Index (Inland Index)[2] is designated as the index to be used for quarterly adjustments under B3.2. If, over the course of the contract, the pricing index becomes inadequate, the contracts provide a contingency. Standard Provision B3.21 states:

> If an index described in A6 is no longer available or there is reason to believe that said index is inadequate to reflect product-price fluctuations, the unavailable or inadequate index may be replaced by another suitable index commonly acceptable in the industry. When there is no replacement index, Current Contract Rate for the remainder of the sale shall be a Flat Rate derived from adjustment of Tentative Rate by the arithmetic average for the index for the proceeding 12 months, using the procedure described in B3.2 for quarterly adjustment. Such Flat Rate shall be subject to rate redeter-

**1.** Standard Provision B3.2 provides as follows:
Tentative Rates for those species and products listed in A5a are subject to quarterly adjustment in accordance with the following procedures: The calendar-quarter index average for each price index described in A6 is the arithmetic average of the three such monthly price indices preceding January 1, April 1, July 1, and October 1. The difference between said calendar-quarter index average and Base Index listed in A5a shall be the basis for quarterly escalation. To arrive at Current Contract Rates for timber scaled during the preceding calendar quarter, Tentative Rates for each species shall be: (a) reduced by such

difference when the calendar-quarter index average is less than Base Index except that a reduction shall not result in a rate below Base Rate, or (b) increased by half of such difference when the calendar-quarter index average is greater than Base Index except that no increase shall exceed the difference between Tentative Rate and Base Rate.

**2.** The Inland Index is based upon reports of Douglas fir and Larch lumber sales by sawmills in WWPA's Inland Region. The Six Rivers National Forest on the North Coast of California is not in the Inland Region.

mination as provided elsewhere under this contract.

On April 10, 1989, this court issued its opinion in *Arcata Forest Prods. Co. v. United States,* 18 Cl.Ct. 93 (1989), *modified,* August 25, 1989, *aff'd,* 915 F.2d 1584 (Fed.Cir.1990). In its decision the court found that the Inland Index was inadequate under the terms of the contract to reflect the actual prices experienced by timber firms located on the North Coast of California as of the end of 1982, and that plaintiffs were entitled to refunds calculated under the Flat Rate provision. *Arcata,* 18 Cl.Ct. at 106. On December 22, 1989, the court rendered its final judgment for plaintiffs for claims relating to seven timber sale contracts for national forest timber on the North Coast of California. That decision was affirmed by the United States Court of Appeals for the Federal Circuit on September 13, 1990. *Arcata Forest Prods. Co. v. United States,* 915 F.2d 1584 (Fed. Cir.1990). Eel River was one of six plaintiffs in *Arcata.*

Since 1982, Eel River has purchased 13,-061.12 thousand board feet (MBF) of Douglas fir timber from the Forest Service under the Spout Timber Sale and 5,111.60 MBF under the Skull Timber Sale. Using the Inland Index to compute the quarterly Current Contract Rates, the Forest Service charged Eel River $2,605,284.60 under the Spout Timber Sale and $1,201,031.75 under the Skull Timber Sale for timber harvested after 1982. Eel River has paid these amounts in full. By letter to the Contracting Officer, received February 5, 1990, Eel River made claims pursuant to the Contract Disputes Act for a refund of money paid for Douglas-fir logs from the Spout Timber Sale in the amount of $554,206.46 and from the Skull Timber Sale in the amount of $356,084.27. These amounts reflect the difference between the Adjusted Rate and the Flat Rate. On February 21, 1990, both claims were denied in their entirety by the Contracting Officer. Plaintiff filed this suit on March 28, 1990.

## DISCUSSION

### I. STANDARD OF REVIEW

■■■ United States Court of Federal Claims Rule (RCFC) 56 provides that summary judgment is appropriate where no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. The burden of demonstrating that there is no material fact in dispute lies with the movant. That burden is also met by showing that there is an absence of evidence to support the non-moving party's case. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). Once the moving party makes a proper demonstration, the burden shifts to the adverse party to provide evidence of specific facts in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[3] Although the court must view all facts in the light most favorable to the non-movant, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), an opponent to a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and may not simply "rest on mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

■■■ To defeat a motion for summary judgment, genuine factual issues must exist that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Such factual issues simply do not exist in this case. The question to be resolved today is whether the court's decision in *Arcata* that plaintiffs were entitled to pay a Flat Rate for harvested timber necessarily included a finding that no suitable alternative index existed. Because this question is legal rather than factual in nature, it is properly before the court on

---

**3.** RCFC 56 is analogous to Fed.R.Civ.P. 56. Decisions addressing Fed.R.Civ.P. 56 are, therefore, applicable to issues concerning RCFC 56.

summary judgment.[4]

## II. COLLATERAL ESTOPPEL

■ "Under the doctrine of issue preclusion, traditionally called collateral estoppel, issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation." *Mothers Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983), citing Restatement (Second) of Judgments § 27 (1980). In *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), the Supreme Court expressly ruled that mutual collateral estoppel may be used against the government. *Montana*, 440 U.S. at 164, 99 S.Ct. at 979.[5] The requirements for the application of this doctrine are:

(1) The issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and 'actually litigated'; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully represented in the prior action.

*Mothers Restaurant*, 723 F.2d at 1569.

■ In this case, plaintiff argues that all four elements of collateral estoppel [6] are satisfied by the court's decision in *Arcata*. Thus, the Forest Service is precluded from relitigating the issue of whether Eel River is entitled to pay for the timber at a Flat Rate under Standard Provision B3.21. Defendant admits that it is barred by *Arcata* from relitigating the issue of the adequacy of the Inland Index. However, the government contends that the availability of a suitable replacement index is a separate issue not embraced by *Arcata*, and, because the suitability of the Pacific North West (PNW) Index is a material fact in dispute, that summary judgment is not appropriate.[7] The court must thus consider

---

**4.** The parties have not taken issue with the evidence and testimony before the court in *Arcata*.

**5.** Recognizing that the government and a private litigant are not identically situated, and, therefore, that the government may be afforded distinctive treatment, *United States Immigration & Naturalization Serv. v. Hibi*, 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973), the Supreme Court held in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), that the government is an inappropriate party against whom to assert nonmutual offensive collateral estoppel. *Id.* at 162, 104 S.Ct. at 573. However, the Court reaffirmed its earlier decision in *Montana* by stating that:

[t]he application of an estoppel when the Government is litigating the same issue with the same party avoids the problem of freezing the development of the law because the Government is still free to litigate that issue in the future with some other party. And, where the parties are the same, estopping the Government spares a party that has already prevailed once from having to relitigate....

*Mendoza*, at 164, 104 S.Ct. at 574. Here, mutuality exists. Therefore, *Mendoza* does not preclude the court from estopping the government from relitigating any issue decided in *Arcata*.

**6.** In its Brief in support of its Motion for Summary Judgment, plaintiff argues that the Forest Service is collaterally estopped from contesting its liability for refunds under Standard Provision B3.21 by the court's judgment in *Arcata*. In its Reply in Support of Motion for Summary Judgment, plaintiff relies on the doctrine of res

judicata for its argument that the Forest Service may not retry the issue of Eel River's right to a Flat Rate because the matters in that dispute arose "out of the same facts and historical events that appeared in the record of the former decision." Plaintiff's Reply at p. 3. In the interests of clarification, the court will briefly focus on the distinction between res judicata and collateral estoppel.

In *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Supreme Court noted the difference:

Under res judicata, a final judgment on the merits bars further claims by parties or their privies on the same cause of action. *Montana v. United States*, 440 U.S. at 153 [99 S.Ct. at 973]; *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 [99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552] (1979). The Restatement of Judgments speaks of res judicata as 'claim preclusion' and of collateral estoppel as 'issue preclusion'. Restatement (Second) of Judgments § 27 (1982).

*Id.* at 158, n. 3, 104 S.Ct. at 571, n. 3.

Because Eel River is making an entirely distinct claim based on two separate contracts from those which formed the basis of *Arcata*, res judicata is inapplicable in this case. Because plaintiff is arguing that the government is precluded from relitigating the same issues, collateral estoppel is the appropriate doctrine here.

**7.** In the alternative, plaintiff argues that: (1) the PNW Index was not a suitable replacement index because it was not commonly acceptable in

the two relevant elements of the four part test.

## A. *Identity of the Issues*

Defendant first asserts that the suitable alternative index question is not identical to the index adequacy issue that was decided in *Arcata*. Rather, it is a separate defense that the government now intends to litigate in the current action. The court cannot agree. Standard Provision B3.21 sets forth the conditions precedent to the right of Eel River to pay for Douglas-fir logs under the Flat Rate provisions of the contracts. If the index described in A6, the Inland Index, is found either unavailable or inadequate to reflect product-price fluctuations, and, there is no suitable replacement index, then the Current Contract Rate for the remainder of the sale shall be a Flat Rate. Therefore, in order to reach a holding that the price paid for the sale of timber should have been calculated using a Flat Rate, a court must address both conditions precedent, the adequacy of the designated index and the availability of a replacement index. Because both issues are necessarily encompassed by the larger issue of whether a Flat Rate should be charged for the timber, they are both identical to that larger issue for purposes of collateral estoppel. Accordingly, the replacement index issue that defendant is attempting to raise in this litigation is identical to the ultimate question resolved by this court in *Arcata*, whether plaintiffs were entitled to refunds based upon the Flat Rate provisions of the contracts. Thus, the first prerequisite of collateral estoppel, identity of the issues, is satisfied.

## B. *Actual Litigation of the Issues*

The government also argues that the replacement index issue was never actually litigated in the *Arcata* case. The court finds no support for this argument. Initially, the court notes that paragraph 33 of the complaint in *Arcata* alleges that:

> the industry on the North Coast; and (2) the Contracting Officer has not issued a decision under the Contract Disputes Act asserting that the PNW Index is a suitable replacement index.

Commencing on or about December 31, 1982, there has been reason to believe that the 1971 Dry DF–L Index is an inadequate indication of product-price fluctuations. *There is no suitable replacement index.* All conditions precedent to the right of Plaintiffs, and each of them, to pay for Douglas-fir logs under the contracts at Flat Rates under Standard Provision B3.21 have occurred. Plaintiffs are entitled to pay for Douglas-fir logs purchased under the contracts in 1983 and for the remainder of each of these sales at a Flat Rate computed under Standard Provision B3.21. (emphasis added).

Plaintiff's specific allegation that no suitable replacement index existed indicates at the very minimum that this matter was before the court and that defendant could have taken issue with it. The fact that defendant did not argue in *Arcata* that a suitable replacement index was in existence does not mean that the court could ignore this portion of Standard Provision B3.21. Contrary to defendant's position, footnote 5 in *Arcata*, which states that "[t]here has been no contention by plaintiffs or defendant that a suitable replacement index exists," *Arcata*, 18 Cl.Ct. at 95 n. 5, simply shows that the court recognized that this matter, as a prerequisite under Standard Provision B3.21, was necessarily before it.

Defendant notes in further support of its contention that the replacement index issue was not actually litigated that, "[t]he main question presented by this case is the factual one of whether the index was inadequate under the contract." *Arcata*, 18 Cl. Ct. at 98. The use of the word "main", however, certainly does not mean that the adequacy of the Inland Index was the *only* issue decided in *Arcata*. The court's ultimate holding was:

> [t]he court finds that the WWPA Index at issue here has become inadequate to reflect North Coast product prices beginning in December of 1982. The plaintiff is therefore entitled to refunds calculated at a flat rate as specified in the contract.

Because the court finds for plaintiff on the collateral estoppel issue, it does not address plaintiff's additional arguments.

*Arcata,* 18 Cl.Ct. at 106. There is no question but that the majority of this court's opinion in *Arcata* dealt with the adequacy of the Inland Index. The reason is obvious. The main question addressed by the parties was the adequacy issue. However, as the court found above, defendant's failure to argue for the suitability of a replacement index does not mean that it was not before the court.

Moreover, the court went on to conclude that plaintiffs were entitled to refunds computed using a Flat Rate. As stated above, Standard Provision B3.21 provides that the Flat Rate may be applicable, but only if the designated index becomes inadequate *and* no suitable replacement index exists. In order for the court to have found that plaintiffs were entitled to refunds calculated at a Flat Rate, it must have addressed both conditions precedent. It must have found that the Inland Index was inadequate and must have found that no suitable replacement index existed. Accordingly, the court has before it the very same issues that led to a determination in *Arcata* that plaintiffs were entitled to be charged the Flat Rate.

In *Tait v. Western Md. Ry.,* 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405 (1933), the government sought to avoid the preclusive effect of an earlier judgment by arguing that the Commissioner "inadvertently" stipulated to an essential fact in the prior litigation, thus preventing a full and accurate presentation of the issues. The Supreme Court rejected this argument:

> The petitioner may not escape the effect of the earlier judgment as an estoppel by showing an inadvertent or erroneous concession as to the materiality, bearing or significance of the facts, provided, as is the case here, the facts and the questions presented on those facts were before the court when it rendered its judgment. (citation omitted) The very right now contested arising out of the same facts appearing in this record, was adjudged in the prior proceeding.

*Tait,* 289 U.S. at 626, 53 S.Ct. at 708.

Similarly, the right now contested in the instant case, Eel River's entitlement to re-funds based on a Flat Rate, arises from the same facts before the prior court. The government's failure to present evidence on suitable alternatives may have been inadvertent, erroneous or a deliberate trial strategy. However, the lack of evidence set forth by the government does not allow it to take a second bite of the apple in this case. That the government labels its second bite a "defense" cannot be determinative. To hold otherwise would contravene the clear holding of the Supreme Court. "[W]here the parties are the same, estopping the Government spares a party that has already prevailed once from having to relitigate...." *Mendoza,* 464 U.S. at 164, 104 S.Ct. at 574. "Application of [collateral estoppel] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana,* 440 U.S. at 153, 99 S.Ct. at 973 (citing *Southern Pacific R.R. Co. v. United States,* 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)).

Eel River's claim in the instant case to refunds under Standard Provision B3.21 is based on the very same contract provision and the very same facts considered and found in *Arcata.* Therefore, the government's replacement index argument is not a separate legal defense but is merely a factual contention based on evidence which it chose not to present in *Arcata.* Defendant made a tactical decision not to present evidence. However, any factual basis for a finding that a suitable replacement index existed was embraced within *Arcata,* and was embraced within the court's ultimate holding that plaintiffs were entitled to pay for Douglas fir timber purchased after 1982 at a Flat Rate under Standard Provision B3.21. By awarding plaintiffs compensation, by declaring that the Flat Rate was the appropriate measure of compensation, it was necessary to the court's decision to find that the PNW Index was not a suitable alternative. The fact that footnote 5 states that there is no contention by either side merely reinforces this conclusion. While there was no evidence put on to support the point defendant now raises,

the issue was clearly before the *Arcata* court. Accordingly, defendant is collaterally estopped from raising this issue in the current action.

## III. THE GOVERNMENT'S DEFENSE OF ESTOPPEL

The government additionally argues that it intends to assert the defense of estoppel and, therefore, that Eel River is not entitled to summary judgment upon its claim to pay the Flat Rate. The doctrine of equitable estoppel acts to prohibit a party from raising a defense or objection otherwise permitted, or from bringing an action which could be pursued under normal circumstances. The doctrine is applicable, however, only if four requirements are met:

(1) the party to be estopped must know the facts;

(2) the party to be estopped must have believed that his conduct would be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) the latter must be ignorant of the true facts; and

(4) it must rely on the former's conduct to his injury.

*Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 96 (1989). The doctrine also may only be applied to correct an inequity. *Estate of German v. United States,* 7 Cl.Ct. 641, 646 (1985) (citing *Ross v. Commissioner,* 169 F.2d 483, 496 (1st Cir.1948)).

Defendant argues that plaintiff is equitably estopped from challenging the adequacy of the Inland Index because Eel River knew that the index was inadequate when it began harvesting the timber under the Spout Timber contract, beginning in the second quarter of 1985, and when it acquired Louisiana Pacific's rights and obligations under the Skull Timber contract in 1987. To support this argument, defendant relies on plaintiff's acknowledgement that "on or about the end of 1982 there has

been reason to believe that the 1971 Inland Dry Index is an inadequate indication of product-price fluctuations."[8] Because the issue of whether plaintiff proceeded with the contract work, despite having knowledge of the inadequacy of the Inland Index, was not litigated in *Arcata,* defendant again argues that summary judgment is not appropriate.

The government's assertion that plaintiff had reason to believe that the Inland Index was inadequate when they began harvesting timber under the two contracts at issue is insufficient to preclude the court from granting plaintiff's summary judgment motion. RCFC 56(f) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment shall be entered against him.

At best, defendant has provided some supporting evidence that the first element of the doctrine has been met, to wit, that Eel River knew the facts. Defendant has given no indication that any evidence exists to support a finding that the remaining three elements have been fulfilled, or that the doctrine could be applied to correct an inequity. Without such supporting evidence, defendant has not set forth specific facts showing that there is a genuine issue for trial.

Moreover, Standard Provision B3.21 provided for alternative pricing methods in the event that the Inland Index became inadequate. Thus, Eel River did not enter into a contract it knew to be inadequate, but rather, one which expressly promised a suitable contract rate, either by the Inland Dry Index, a suitable replacement index or a Flat Rate. The court finds no merit in the government's contention that Eel River

---

**8.** Defendant's Opposition to Plaintiff's Motion for Summary Judgment, at 8 (quoting Com-   plaint, at 4).

should be estopped from claiming entitlement to the Flat Rate pricing. Further, until this court's decision in *Arcata* and that decision's affirmance by the Federal Circuit, the inadequacy question was not a fact, but a legally disputed issue.

### CONCLUSION

The court holds that the government is collaterally estopped from relitigating the issue of Eel River's entitlement to pay at the Flat Rate for timber harvested under the Skull and Spout Timber contracts. Because there are no genuine issues of material fact to be resolved involving Eel River's right to a refund using the Flat Rate, plaintiff's motion for summary judgment on liability is granted.

In its motion plaintiff requests judgment in the amount of $910,290.72, plus interest from February 5, 1990. Plaintiff also seeks judgment that Douglas fir timber scaled since December 31, 1989 be charged for at a Flat Rate under B3.21. Within sixty (60) days from the date of this opinion, the parties shall submit a joint report either stipulating to an amount of damages or requesting the court's involvement in this issue and the post–1989 timber issue.